**UNITED STEELWORKERS OF AMERICA, AFL-CIO, Appellant,**

v.

**WARRIOR & GULF NAVIGATION COMPANY, Appellee.**

No. 17646.

United States Court of Appeals
Fifth Circuit.

July 30, 1959.

Rives, Circuit Judge, dissented.

David E. Feller, Arthur J. Goldberg, Washington, D. C., Hugo L. Black, Jr., Cooper, Mitch, Black & Crawford, Birmingham, Ala., for appellant.

Samuel Lang, New Orleans, La., T. K. Jackson, Jr., Mobile, Ala., for appellee. Kullman & Lang, New Orleans, La., Armbrecht, Jackson, McConnell & De-Mouy, Mobile, Ala., of counsel.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a denial by the trial court of an order granting specific performance of an agreement to arbitrate. The action was brought by the appellant, United Steelworkers of America, AFL-CIO, against the appellee, Warrior & Gulf Navigation Company, under Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185. The sole question presented by the suit is whether, under the terms of the collective bargaining agreement between the parties, unilateral action by the employer in contracting out work that had previously been performed by members of the bargaining unit gave rise to a dispute which is subject to arbitration. The district court held that it did not, and, accordingly, dismissed the Union's complaint.

The employer is engaged in the transportation by barge of steel products and raw materials used in the manufacture of steel. It maintains a terminal at which it performs certain repair and maintenance work on its barges. During the term of the current collective bargaining agreement the company undertook to contract with others to perform some of this maintenance work. This resulted in the filing of a grievance by the union which averred as follows:

> "Nature of Grievance. We are hereby protesting the Company's actions, of arbitrarily and unreasonably contracting out work to other concerns, that could and previously has been performed by Company employees.
>
> "This practice becomes unreasonable, unjust and discriminatory in view of the fact that at present there are a number of employees that have been laid off for about 1½ years or more for allegedly lack of work.
>
> "Confronted with these facts we charge that the Company is in violation of the contract by inducing a partial lock-out, of a number of employees who would otherwise be working were it not for the unfair practice."

The Company took the position, which it adhered to in the suit below, that the matters dealt with in the grievance were not subject to grievance procedures. These grievance procedures are provided for by Section 10 of the collective bargaining agreement, the first paragraph of which follows:

> "Issues which conflict with any Federal statute in its application as established by Court procedure or matters which are strictly a function of management shall not be subject to arbitration under this section."

This language is immediately followed by a second introductory paragraph upon

**636**

which the appellant places major reliance. It provides:

"Should differences arise between the Company and the Union or its members employed by the Company as to the meaning and application of the provisions of this Agreement, or should any local trouble of any kind arise, there shall be no suspension of work on account of such differences, but an earnest effort shall be made to settle such differences immediately in the following manner: * * *"

▉ In bringing its suit for specific performance of an agreement to arbitrate the appellant must of course, show that the collective bargaining agreement places on appellee the duty to arbitrate. Local No. 149, of Am. Federation of Technical Engineers, (A.F.L.) v. General Electric Co., 1 Cir., 250 F.2d 922, 927. The initial determination whether such duty arises under the contract must be made by the court. Local No. 149 of Am. Federation of Technical Engineers (A.F.L.) v. General Electric Co., supra; Engineers Association v. Sperry Gyroscope Co., 2 Cir., 251 F.2d 133, 137. Since an agreement relating to the processing of grievances, including compulsory arbitration, may appropriately be dealt with by the parties as they see fit, it is of course within the competence of the Union and the employer to limit the subject matter of such grievance procedures. Here the parties introduced the section dealing with grievances by an initial withdrawal from the provisions of the section of any matters "which are strictly a function of management." We have heretofore in Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, Division 1326 v. Greyhound Corporation, 5 Cir., 231 F.2d 585, 57 A.L.R.2d 1394, stated that whatever subjects are not covered by an employment contract are left to the parties to act upon as they see fit. The contract before us does not deal with the power of the employer to contract with others to perform services previously done by its employees. Since this is a matter as to which an employer

may, except as limited by a specific collective bargaining agreement, act without violating either state or federal law, it remains, so far as relates to this agreement, strictly a matter of management. Even if this result did not follow from the fact that the contract does not restrict such action, it would nevertheless follow by reason of the construction of this collective bargaining agreement in the light of the conduct of the parties in negotiating it.

The trial court, upon ample evidence, made the following findings of fact:

"8. Throughout the successive labor agreements between these parties, including the present one, the plaintiff has demonstrated that it was and has been aware of the defendant's practice of contracting out such work. and it has unsuccessfully sought to negotiate changes in the labor contracts, and particularly during the negotiation of the present labor agreement, in the year 1956, which would have limited the right of the defendant to continue the practice of contracting out such work.

"9. None of the contracts between the parties affecting the employees involved here has ever contained any provision limiting or abridging in any manner the defendant's right to contract out work of any kind, nor has there been any complaint or grievance at any time prior to August 22, 1958, that any of the labor contracts between the parties in any way limited or abridged the right of the defendant to contract out maintenance or repair work." 1958, 168 F.Supp. 702, 704–705.

▉ Thus, what we have here is a collective bargaining agreement resulting from negotiations between the parties, one of which sought to include a provision prohibiting the company from contracting out some of its work. Having failed at the conference table to obtain the consent of the other party to the inclusion of such provision, it signed the

contract that was finally worked out, presumably by a process of "give and take" between the parties. It is not only consistent with basic principles governing the construction of a contract for the court, as it did, to hold that the final product should not be construed to give the Union the provision it had unsuccessfully sought to have incorporated, but it would be unconscionable for the court to hold to the contrary. Whatever may be meant ordinarily by the term "inherent rights of management," (Cf. Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, Division 1326 v. Greyhound Corporation, supra) we clearly have here a matter which by the agreement of the parties, is "strictly a matter of management."

■ Having decided that the criticized action of the Company is action which by the agreement of the parties was not to be a subject of arbitration, we conclude that the trial court correctly decided that the action for specific performance must fail. See Local No. 149 of Am. Federation of Technical Engineers (A.F.L.) v. General Electric Co., 1 Cir., 250 F.2d 922; United Steel Workers of America v. American Manufacturing Co., 6 Cir., 264 F.2d 624.

■ The appellant attempts, by characterizing the simple facts of contracting out maintenance work as "unreasonable, unjust and discriminatory," and by asserting such conduct by the Company amounts to "inducing a partial lockout," to set the complaint within a frame of reference comprehended by the agreement to arbitrate. This, however, cannot change the fact that the criticized action, by whatever name called, remains exempted from the range of arbitration. Moreover, it is plain that characterizing this action as "discriminatory" is not sufficient to bring it within the prohibition of the contract which forbids "dis-

crimination against any member of the Union." This is so because there is no discrimination charged in the grievance except that the contracting out occurred at a time when there "are a number of employees that have laid off for about 1½ years or more allegedly because of lack of work. Nor does the characterization of the Company's action as "a partial lockout" bring it within the language of the section making a "lockout on the part of the Company" a violation of the agreement. Any contention that such action as is here criticized amounts to what is known in labor-management relations as a "lockout" is clearly a simple play on words and is insubstantial.

The judgment is affirmed.

RIVES, Circuit Judge (dissenting).

Originally of like view with my brothers and the learned district judge, further study and reflection have brought me to the certain conclusion that this judgment should be reversed.

The union's grievance as stated by a group of laboring men need not meet the technically precise requirements of strict pleadings. As quoted in the majority opinion, it clearly states: first, that the employer has engaged in the practice of subcontracting to such an extent that, under the conditions currently prevailing, the practice amounts to a partial lockout in violation of the express terms of the collective bargaining contract; and, secondly, that the employer has engaged in this practice for the purpose of discriminating against members of the union, again in violation of the express terms of the contract.[1]

In order to determine the arbitrability of this grievance, reference must be made to Section 10 of the contract, which provides, in pertinent part, as follows:

"Adjustment of Grievances

"Issues which conflict with any Federal statute in its application as

---

**1.** In its brief, the union also suggests that the grievance is premised upon the theory that the employer's actions are in violation of the purpose, recognition, wages, and seniority clauses of the con-

tract. Such allegations do not, however, raise a different theory for these clauses are ultimately dependent for their content upon the discrimination and lockout clauses.

established by Court procedure or matters which are strictly a function of management shall not be subject to arbitration under this section.

"Should differences arise between the Company and the Union or its members employed by the Company as to the meaning and application of the provisions of this Agreement, or should any local trouble of any kind arise, there shall be no suspension of work on account of such differences, but an earnest effort shall be made to settle such differences immediately in the following manner * * *."

Section 10 then proceeds to outline a five-step grievance procedure culminating in arbitration by an impartial umpire selected by the parties.

The decision in this case ultimately turns upon the interpretation given to the above-quoted provisions of Section 10. The employer, on the one hand, contends: that the first paragraph of Section 10 creates an overriding exclusion from the general arbitration provisions that follow; that this exclusion is for judicial cognizance rather than merely a direction of the arbitrator; and that the matter of subcontracting falls entirely within this exclusion in that it is "strictly a function of management." The union, on the other hand, joins issue on each of these points, contending: first, that no overriding exclusion from the general arbitration provisions is created; secondly, that, even if such an exclusion were created, the context renders it clear that the exclusion is no more than a direction to the arbitrator; and, finally, that, in any case, the matter of subcontracting without any restrictions is not "strictly a function of management," but, rather, is limited by other provisions of the agreement. I agree with the contention of the union on this

third point, and hence do not reach the first two.[2]

Insofar as the union's grievance is premised upon the theory of a partial lockout, the controlling section of the agreement, in my view, is Section 3, which provides:

"Illegal Suspension of Work

"A strike or stoppage of work on the part of the employees represented by the parties signatory hereto shall be a violation of this Agreement, and there shall be no strikes, work stoppages, interruptions, or impeding of work. Likewise, a lockout on the part of the Company shall also be a violation of this Agreement."

This blanket prohibition of strikes and lockouts is nowhere qualified in the Agreement. On the contrary, the entire tenor of the Agreement is that the parties are seeking complete stability. By Section 3 the employer has unreservedly relinquished any managerial prerogative it might have had to resort to a lockout and, at the same time, it has subordinated any retained management functions to the overriding qualification that they not be exercised to effect a lockout. Any other construction would render nugatory the express provisions of Section 3.[3]

It therefore seems clear that, if the charges contained in the union's grievance of August 22 are true, the actions of the employer in subcontracting work are in violation of Section 3 of the contract. The essential question then is whether the contract contemplates the determination of these charges by arbitration. When attention is directed to the nature of the issues raised by the charges, it is clear that this question must be answered affirmatively.

2. With respect to the questions raised concerning the first paragraph of Section 10, appellant's observation that "this can hardly be said to be a model of contractual draftsmanship" seems well taken.

3. It cannot be said of the present arbitra-

tion clause as was said in Refinery Employees Union of the Lake Charles Area v. Continental Oil Co., 5 Cir., 268 F.2d 447: "The arbitration clause in the case at bar is not a broad grant of authority to the arbitrators, a *quid pro quo* for giving up the right to strike."

In the first place, the contract provides for the arbitration of "differences * * as to the meaning and application of the provisions of this Agreement." Clearly, such differences are involved here. The dispute turns upon the meaning and application of the term "lock-out" as it appears in Section 3. Moreover, the contract provides for the arbitration of "any local trouble of any kind." A dispute as to the existence of a partial lockout would seem to be equally well covered by this provision.[4]

The decision of the district court below was premised upon acceptance of the employer's contention that subcontracting is "strictly a function of management" under the terms of the contract, and, therefore, disputes in reference thereto are expressly excluded from the scope of the arbitration provisions by the first paragraph of Section 10 of the Agreement.

Such a premise does not, however, withstand close examination. The management functions clause itself in the contract certainly does not sustain it. That clause provides only that

> "[t]he management of the Company and the direction of the working forces, including the right to hire, suspend or discharge for proper cause, or transfer, and the right to relieve employees from duty because of lack of work, or for other legitimate reasons, is vested exclusively in the Company, provided that this will not be used for purposes of discrimination against any member of the Union."

The employer has sought to avoid the implications of the absence of any express provision for the retention of the matter of subcontracting as a management function by reliance upon evidence which it contends establishes a practical construction of the contract to that effect, and which is summarized in the district court's findings of fact numbered 8 and 9, quoted in the majority opinion. Though those findings are amply supported by the evidence in the record, they are of no avail to the employer here. This is so because they fall entirely short of justifying the conclusion that unrestricted subcontracting in violation of other provisions of the collective bargaining agreement cannot give rise to an arbitrable grievance.

At the very most, these findings establish only that subcontracting is not, in itself, a violation of the contract and that the practice of subcontracting as it was engaged in by the employer during the earlier years of the relationship between the parties did not involve a breach of any other provisions of the contract. Quite obviously, these propositions do not dispose of the issues of this case. Since the allegation of a partial lockout is based upon *currently prevailing conditions*, the history of the relationship between the parties is in no way inconsistent with the union's present contention.[5] To borrow the words of a well-known labor arbitrator—"The * * * issue * * * is not whether the Company may contract out *all* of its work or *none* of its work. It is whether there was any implied contractual bar to the contracting out of *this particular* * * * *work:*

---

4. See Timken Roller Bearing Co. v. N. L. R. B., 6 Cir., 1947, 161 F.2d 949, wherein the Court of Appeals for the Sixth Circuit took a similar view of an identical arbitration provision.

5. To hold otherwise would be to completely ignore the difference between a contract which limited or absolutely prohibited subcontracting and one which merely subordinated the employer's right to subcontract to the more general obligations imposed upon him by the collective bargaining contract, such as the obligation not to lockout and the obligation not to discriminate. The union's attempt to obtain a contract which would fall into the first of these categories certainly does not constitute an admission that the existing contract did not already fall into the second. Insofar as Finding of Fact No. 11 of the district court (168 F.Supp. 702, 705) is at variance with these views, it is incorrect.

\* \* \* *under the circumstances of this particular case."* [6]

Insofar as the union's grievance is premised upon the theory that the employer has utilized the practice of subcontracting to discriminate against the members of the union, the case is even stronger. Section 11 of the contract *expressly* subordinates all management functions to the overriding limitation that they "not be used for purposes of discrimination against any members of the Union." Thus, "matters which are strictly a function of management," as that term is used in Section 10 of the contract, can never be interpreted to include disputes involving allegations of discrimination. To do so would involve ignoring express limitations in the management functions clause itself.[7]

In its Findings of Fact, the district court concluded that:

"7. The defendant has contracted out such repair, maintenance and construction work solely for reasons of economy and efficiency.

\* \* \* \* \* \*

"13. There has been no showing by the plaintiff that the defendant has engaged, in or, insofar, as these proceedings are concerned, could be adjudged to have engaged in any conduct which has violated any of the provisions of the present labor contract." 168 F.Supp. 702, 704, 705.

Without expressing any opinion as to the correctness of these findings, they are without effect upon the course of this litigation. They involve a determination of the merits of the union's grievance, and, consequently, constitute an invasion of the province of the arbitrator as defined in the contract between the parties.[8]

I think that the judgment should be reversed, and therefore respectfully dissent.

---

6. Ralph T. Seward, Bethlehem Steel Co., 30 LA 678. (Emphasis in original.)

7. The interpretation given here to the term "strictly a function of management" cannot be objected to on the ground that it completely destroys the meaning of that clause. On the contrary, the clause is not without meaning, for it operates to preclude from arbitration any dispute as to the propriety of the exercise of a management function which does not involve a violation of other substantive provisions of the contract. For example, the employer need not arbitrate a dispute concerning his power to discharge for proper cause. If, on the other hand, the dispute involves an allegation that no proper cause for the discharge existed, or that the discharge was motivated by discriminatory purposes, the contract requires reference of the dispute to arbitration.

Similarly, the employer is under no obligation to arbitrate a dispute concerning his power to subcontract. But where, as here, the allegation is that this power has been utilized to violate other provisions of the contract, the duty to arbitrate arises.

Thus, the term "strictly a function of management" is interpreted to mean a function of management, the exercise of which does not involve a violation of any of the other provisions of the contract. Indeed, it is difficult to see how the word "strictly" could have any other meaning.

8. We are not here confronted with the necessity of determining whether this Court will adopt the so-called Cutler-Hammer doctrine. See International Association of Machinists, Dist. No. 15, Local No. 402 v. Cutler-Hammer, Inc., 271 App.Div. 917, 67 N.Y.S.2d 317 (Sup.Ct., 1947, affirmed without opinion, 1947, 297 N.Y. 519, 74 N.E.2d 464. Under this doctrine, some courts have refused to order arbitration of a dispute otherwise clearly arbitrable on the ground that the plaintiff's grievance was so clearly without merit that no substantial question for arbitration was raised. See, e. g., United Steelworkers of America v. America Manufacturing Co., 6 Cir., 1959, 264 F.2d 624. But see Judge Magruder's opinion in New Bedford Defense Products Division of Firestone Tire & Rubber Co. v. Local 1113, U.A.W., 1 Cir., 1958, 258 F.2d 522, 526–27. Without taking any view on the merits of this doctrine, I would hold that the grievance here sought to be arbitrated is not so lacking in substance as to fall within its ambit. The dispute is therefore arbitrable under the principles enunciated by this Court in Lodge No. 12, Dist. No. 37, International Ass'n of Machinists v. Cameron Iron Works, Inc., 1958, 257 F.2d 467, 471.