INDEPENDENT PETROLEUM WORK-
ERS OF AMERICA, INC.,
Plaintiff-Appellant,

v.

STANDARD OIL COMPANY, Defendant-
Appellee.

INDEPENDENT PETROLEUM WORK-
ERS OF AMERICA, INC.,
Plaintiff-Appellee,

v.

STANDARD OIL COMPANY, Defendant-
Appellant.

Nos. 12802–12803.

United States Court of Appeals
Seventh Circuit.

March 2, 1960.

Stark Ritchie, Chicago, Ill., Richard P. Tinkham, John F. Beckman, Jr., Daniel F. Kelly, Hammond, Ind., for Standard Oil.

William Belshaw, Whiting, Ind., Green, Powers, Belshaw & Danko, Whiting, Ind., of counsel, for Independent Petroleum.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

This is an action brought under § 301 of the Labor-Management Relations Act, 29 U.S.C.A. § 185 to compel arbitration under the provisions of a collective bargaining agreement. Independent Petroleum Workers of America, Inc., plaintiff, filed a complaint in the District Court seeking to compel the Standard Oil Company, defendant, to join in submitting to arbitration two grievances concerning the performance of maintenance and repair work by an independent contractor. The complaint was later amended to ask similar relief with respect to an additional dispute involving the seniority of an employee.

The issue relating to the maintenance and repair work was submitted on the pleadings and a stipulation of facts. Both parties moved for summary judgment on the issue relating to seniority rights. The District Court found for and entered judgment in favor of the defendant in so far as the maintenance and repair work dispute was concerned and the plaintiff appealed. Plaintiff's motion for summary judgment was granted and judgment entered for plaintiff ordering the defendant to join in the submission of the seniority rights dispute to arbitration. Defendant appealed as to this judgment.

The contested issue involved in both appeals is whether the respective grievance or dispute is one with respect to which the parties in their collective bargaining agreement have agreed to arbitration.

The agreement provides for the arbitration of unsettled grievances. Section 10 then imposes limitations on arbitration which, in so far as here pertinent, provide:

"A. Questions which may be referred to arbitration shall be limited to:

"1. Questions directly involving or arising from applications, interpretations or alleged violations of the terms of this agreement.

"2. Questions directly involving or arising from applications, interpretations or alleged violations of the terms of arbitration awards and written agreements not incorporated in this Agreement.

"3. Questions of applications or interpretations of or alleged non-compliance with past policies, practices, customs or usages relative to working conditions, and grievances arising from:

"(a) the modification by the Company of any of said policies, practices, customs and usages, or

"(b) the discontinuance by the Company of any of said policies, practices, customs and usages, or

"(c) the establishment by the Company of new policies, practices, customs or usages during the term of this Agreement."

The plaintiff contends that the grievances concerning performance of maintenance and repair work by an independent contractor are arbitrable under the provisions of Section 10 A. (3) of the agreement referring to past practices relative to working conditions.

For many years the defendant has used both its own employees and independent contractors to perform maintenance and repair work at its Whiting, Indiana Refinery. Approximately 90% of such work has been performed by company employees rather than independent contractors. In using independent contractors to perform maintenance and repair work, certain factors were considered by the defendant; among these were the availability of qualified employees, whether the work involved secret, patented or unique processes or materials, whether the defendant had the equipment to perform the work, whether the independent contractor guaranteed the quality of the work, economic considerations, previous experience with its own employees in similar work, and whether the work was hazardous or disagreeable. Where practicable, defendant uses its own employees, but a partial list of maintenance and repair work contracted out at the Whiting Refinery during the years 1953 to 1958, inclusive, contains over 250 examples of various types of maintenance and repair work performed by independent contractors.

Prior to 1952 several collective bargaining agreements between the parties required submission to arbitration of substantially any dispute. In 1952 the limitations contained in Section 10 A. were incorporated into the agreement. During negotiations in 1955 with relation to modifications and revision of the agreement, the plaintiff Union proposed a "contracting out of work" clause which would have prevented the defendant from contracting any work to independent contractors, provided the defendant had the equipment and qualified employees necessary to perform the work. This proposal was rejected by the defendant. During similar negotiations in 1957 a rejected Union proposal would have precluded the use by defendant of independent contractors for work involving any craft while defendant's own employees with seniority in such craft were performing lower rated labor work, unless defendant's own employees with seniority in the particular craft were returned to their craft jobs and rates while the employees of the independent contractors were performing any work involving the same work in defendant's plant. Again, in 1959, defendant rejected a Union proposal that a clause be incorporated in the agreement which would provide that the company would not contract out work normally performed by the production and maintenance employees at the refinery.

In October of 1957 the defendant contracted with an independent contractor

for the performance of certain maintenance and repair work involving the repair and refinishing of stucco walls of a truck garage at the Whiting Refinery and in connection therewith employees of the independent contractor built and tore down a scaffold and performed certain cement or stucco finishing. The incident precipitated the filing of two grievances by plaintiff, as follows:

> "Independent Petroleum Workers of America requests that Carpenters backed down to labor be paid the craft rate for work performed by contractors (scaffold building and tear down) in the Truck Garage."

> "The Board of Directors of the Independent Petroleum Workers of America requests that as required by the recognition clause of the applicable agreement and established past policy, practice, custom and usage, employees classified as Cement Finishers be assigned and perform all cement finishing work, as established by such past policy, practice, custom or usage, and that all employees who were displaced from such work or deprived of additional work in such classification by virtue of the use of employees of an independent contractor to perform such work be compensated by the appropriate rate for all time and pay so lost."

Both grievances were denied and the defendant refused to submit them to arbitration on the ground that they were not arbitrable under the terms and provisions of the agreement.

■ Since Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, the district courts are empowered under § 301 of the Labor-Management Relations Act, 29 U.S.C.A. § 185 to decree specific performance of an agreement to arbitrate a grievance dispute. Brass and Copper Workers Federal Labor Union etc. v. American Brass Company, 7 Cir., 272 F. 2d 849. But since arbitration is voluntary and consensual in nature, warrant

therefor must be found within the terms and conditions of the bargaining agreement. Local 1912, International Association of Machinists v. United States Potash Company, 10 Cir., 270 F.2d 496.

The bargaining agreement between the plaintiff and defendant contains no express reference to the subject of contracting out of any kind of work to independent contractors. The subject matter of a dispute or grievance in order to be arbitrable under the provisions of Section 10 A. (3) of the agreement, relied on by plaintiff, must concern a past policy, practice custom or usage relative to working conditions.

■ In our opinion the language of Section 10 A. (3) of the agreement relating to past policies, practices, customs or usages "relative to working conditions" was not intended to and does not include within its scope the subject of contracting out maintenance and repair work on plant or equipment to independent contractors. United Steelworkers of America, AFL-CIO v. Warrior & Gulf Navigation Company, 5 Cir., 269 F.2d 633. This is especially so in view of the history of the negotiations of the parties concerning the performance of work by independent contractors. The continued bargaining on the subject evidences their intent and understanding.

In addition, the stipulated facts concerning the past practice of defendant in letting out maintenance and repair work to independent contractors serve to demonstrate that the subject had always been treated as a matter of managerial prerogative. The defendant in determining what would be done through independent contractors was guided by a number of factors and considerations including practicability and advantages to be derived. That company employees performed 90% of such work does not establish that such result was dictated by a policy relative to "working conditions" as opposed to an exercise of business judgment by management on the various factors involved. There is no disclosure of any pattern in which consideration of employee working conditions operated to

restrict the exercise of managerial prerogative.

In Timken Roller Bearing Co. v. National Labor Relations Board, 6 Cir., 161 F.2d 949, relied upon by plaintiff, arbitrability of the question of contracting out work was recognized as an interpretation of a management function clause of the agreement there involved. That case is of no assistance to the plaintiff. It supports the defendant's contention that the performance of work by independent contractors is a subject matter within managerial function and prerogative rather than "relative to working conditions". And Local 1912, International Association of Machinists v. United States Potash Company, 10 Cir., 270 F.2d 496, 498, also relied upon by plaintiff, did not involve the limitation upon arbitrable subject matter present in the instant case. The contract there considered was "not couched in terms of specified grievances which are to be arbitrated, thereby excluding all other by implication". Nor did the case involve construction of a "past policies * * * relative to working conditions" clause such as is here relied upon. The case is no authority for finding arbitrability under Section 10 A. (3), relied upon by plaintiff.

■ The trial judge did not err in refusing to order the defendant to submit the grievances relating to the maintenance and repair work to arbitration. The defendant had not contracted to refer the issue to arbitration. It is only where such a contract has been made and the promise broken that the court will order arbitration. Local No. 149 of American Federation of Technical Engineers (AFL) v. General Electric Company, 1 Cir., 250 F.2d 922, certiorari denied 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed. 2d 813.

The dispute as to seniority rights related to Rolland Hopper, a non-supervisory employee of defendant at the Whiting Refinery. On September 12, 1958, he was advanced from the non-supervisory classification of crane operator to the supervisory position of "Foreman-Transportation, Pro-Tem" in the crane department. About September 14, 1958, Hopper and certain other Whiting Refinery supervisors were sent to defendant's Mandan, North Dakota, Refinery to perform temporary work at that refinery while its employees were on strike. Hopper and the other foremen were informed that this was a temporary assignment, and all of these foremen remained on the Whiting payroll. About October 3, 1958, Hopper and the other supervisors returned to the Whiting Refinery where Hopper resumed his supervisory duties. About October 20, 1958, Hopper was returned to the non-supervisory classification of crane operator and his seniority rights in the non-supervisory class as they existed before his promotion were recognized.

During the period involved, and since the year 1945, the seniority list of employees, posted in the crane department, pursuant to Article IX, Section 1. of the collective agreement provided:

"An employee who has been advanced from any hourly rate job, when reduced, will assume a position in any lower classification in line with his service rights in that classification".

The Union protested recognition of Hopper's seniority rights and filed the following grievance:

"The IPWA Board of Directors requests that the job and departmental dates of Rolland Hopper (961) be deemed forfeited by virtue of his having accepted supervisory employment at another installation location (Mandan), and that the available employees displaced by him on October 20, 1958 be paid what they would have earned had they not been displaced."

■ The defendant concedes that there can be no question that the matter of seniority is a condition of employment. Defendant's rule governing seniority constitutes a past practice and policy relative to working conditions within the scope of Section 10 A. (3) of

the bargaining agreement. The grievance raised a question as to the interpretation or application of the rule. The District Court did not err in ordering the defendant to join in the submission of this grievance to arbitration.

Each of the judgment orders is affirmed.

Affirmed.

SCHNACKENBERG, Circuit Judge (specially concurring).

I would hold that both of the disputes involved in this case are arbitrable under section 10 A of the agreement.