**INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 391, Plaintiff-Appellee,**

v.

**WEBSTER ELECTRIC COMPANY, a corporation, Defendant-Appellant.**

**No. 13428.**

United States Court of Appeals Seventh Circuit.

Feb. 7, 1962.

Lawrence E. Gooding, Jr., Milwaukee, Wis., Harold M. Keele, Chicago, Ill., Halbert O. Crews, Chicago, Ill., Peebles Greenberg & Keele, Chicago, Ill., Quarles,

Herriott & Clemons, Milwaukee, Wis., of counsel, for appellant.

Max Raskin, Milwaukee, Wis., Raskin & Zubrensky, Milwaukee, Wis., Bratt & Shapiro, Milwaukee, Wis., of counsel, for appellee.

Leon B. Lamfrom, Milwaukee, Wis., Lamfrom & Peck, Milwaukee, Wis., of counsel, for Employers Ass'n of Milwaukee, amicus curiae.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Defendant Webster Electric Company, a corporation, appeals from a declaratory judgment of the district court in favor of International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, Local 391, plaintiff.

The case was tried on plaintiff's complaint, defendant's answer and a stipulation of facts.

Plaintiff is a voluntary labor organization within the meaning of § 2(5) of the National Labor Relations Act and § 301 of the Labor Management Relations Act, 29 U.S.C.A. §§ 152(5), 185. Defendant is engaged at Racine, Wisconsin, in activities affecting commerce within the meaning of the latter act.

On or about August 8, 1956, defendant entered into a collective ·bargaining agreement with plaintiff, which was in force and effect at all times material to the issues in this case.

In June, 1958, defendant contracted with the Racine Police Protective Association, an independent contractor, for the performance of defendant's office janitorial work which theretofore had always been performed by employees of the defendant within the bargaining unit. Defendant thereupon laid off three employees who had formerly performed the janitorial services, all of whom were covered by the union contract. The action was taken without the consent of plaintiff.

The individuals who have performed the janitorial work after June 1958 are not employees of defendant, but are employees of the Association. They are not members of plaintiff union and are not covered by the provisions of the collective bargaining agreement.

Plaintiff has complied with all grievance provisions of the agreement with reference to these events, but defendant has refused to grant the relief requested. Defendant refused to reinstate the three laid-off employees. This action followed.

By article I of the collective bargaining agreement, defendant agreed to recognize plaintiff as the sole bargaining agency for all its employees, and it was stipulated that the agreement is to cover all persons employed at the Racine plants of defendant, with certain exclusions not here relevant.

By article II defendant agreed that there would be no lockout of the employees and plaintiff agreed that there would be no strike until all prescribed bargaining procedure had been exhausted.

By article IV seniority was recognized, while article XI provided for a union shop.

Plaintiff asked the district court to declare by its judgment that defendant does not have the right to "subcontract" work ordinarily and customarily performed on its premises in the Racine plant by its employees, members of and represented by, the defendant[1] union.

Plaintiff makes the assertion, which is not denied, that there is no clause in the collective bargaining agreement specifically reserving this right to defendant, nor is there any "management prerogatives clause" in said agreement.

1. We approach the problem presented to us by noting that, until June 20, 1960, when United Steelworkers of America, AFL–CIO v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, was decided, according to plaintiff's brief, most federal

---

1. We are required to assume that "plaintiff" is meant.

courts, including this court (Independent Petroleum Workers of America v. Standard Oil Co., 275 F.2d 706) held that management had a right to contract out[2] work, and, according to defendant's brief, *before* Steelworkers *and since*, management has had such right unless it is limited by the terms of the bargaining agreement.

It is therefore not surprising that plaintiff now asserts that Steelworkers is authority for its contention that employers do not have a unilateral right to contract out work on company premises, in the absence of an express provision in the collective bargaining agreement.

We disagree with this contention even though the district court was in accord with it.

Steelworkers *did not* decide the question of substantive law, i. e., whether an employer does have a unilateral right to contract out work, where there is no express controlling provision in the existing collective bargaining agreement.

Steelworkers *did* decide, 363 U.S. at 585, 80 S.Ct. at 1354, that whether contracting out violates an existing bargaining agreement is a question which is for the arbiter and not for the courts, if there be an arbitration clause in the agreement.

Steelworkers recognizes that the judiciary sits to bring into operation an arbitral process which, in that case, was provided for by the bargaining agreement.

Lacking an arbitration clause in the case at bar, the question of whether contracting out violated the agreement is a question for the judiciary.

2. These teachings which we get from Steelworkers leave us without any suggestion as to how to decide the substantive question now before us: Has the right of defendant to contract out work, concededly recognized (except for the unfounded reliance of plaintiff on

Steelworkers), been modified or abrogated by the provisions, express or implicit, of the bargaining agreement?

Plaintiff and defendant have an agreement which, while it is in effect, fixes the rights of each against the other. Any right not effectually asserted by either in negotiations leading to the execution of the agreement cannot now be insisted upon during the stated life of the agreement if it be inconsistent with the purpose and scope of that document. There is no express prohibition of contracting out to be found in the agreement. But for the agreement, defendant would have that right, as an incident of management. However, there *is* an agreement providing for a union shop. The employees covered by that agreement are described as *all* defendant's employees, with certain irrelevant exceptions. This classification includes the office janitorial employees. Thus they are required to be members of plaintiff union. If they were to be excluded the agreement should have said so. By including them, the contracting parties in effect negatived any intention to treat them differently from other employees. The fact that they are but three in number does not distinguish their job rights from those of their more numerous union brothers. If this small group can be thus replaced, then other groups could meet the same fate, and eventually it would be possible to deplete a major part of the "protected" union shop force. We hold it would be inconsistent with the basic purpose of the agreement to approve the contracting out of the janitorial jobs here involved.

3. The district court in conclusion of law 5 stated that defendant breached the agreement with plaintiff when it laid off the three employees, and in conclusion of law 6 stated that defendant "does not have the right, without consent of the plaintiff, to subcontract the office janitorial work, to be performed by em-

---

2. Being of the opinion that "subcontract" is a malapropism, we prefer to use the phrase "contracting out" or "contract out". See Steelworkers, supra, 363 U.S.

585, 80 S.Ct. 1354; and Petroleum Workers, supra, 275 F.2d 708–709, where the erudition of Mr. Justice Douglas and Judge Castle supports us.

ployees not covered by the bargaining unit, on defendant's premises".

We find no error in this action.

. 4. We believe that the district court erred in its conclusion of law 4 holding, under the circumstances here, that defendant locked out the three employees. There was no coercion or economic pressure exerted by defendant in this action. There was no lockout. Iron Molders' Union, etc. v. Allis-Chalmers Co., 7 Cir., 166 F. 45, 50, and Morand Bros. Beverage Co. v. National Labor Relations Board, 7 Cir., 190 F.2d 576, 582; Id., 7 Cir., 204 F.2d 529, 531. We therefore conclude that paragraph 3 of the judgment order from which this appeal has been taken, reading as follows,

"That the defendant Company, by laying off the three employees performing office janitorial work on Company premises, members of the Union, did lock out said employees, contrary to the provisions of Article II, Section 6 of the contract."

must be reversed.

For the reasons expressed herein, paragraph 3 of said judgment is reversed and said judgment is in all other respects affirmed.

Judgment partly reversed and partly affirmed.

KNOCH, Circuit Judge (dissenting).

I regretfully find myself in disagreement with Judges SCHNACKENBERG and SWYGERT in this matter.

The majority opinion notes that prior to the Warrior case, "most federal courts, including this court * * * held that management had a right to contract out work * * * unless [such right] is limited by the terms of the bargaining agreement." The opinion also states that the Warrior case is not "authority for [plaintiff's] contention that employers do not have a unilateral right to contract out work on company premises, in the absence of an express provision in the collective bargaining agreement."

The majority then conclude that although "[t]here is no express prohibi-tion of contracting out to be found in the agreement, * * * *" nevertheless the existence of the right to contract out is inconsistent with the provisions for a union shop. This conclusion is based on the theory that if the small group here involved "can be thus replaced, then other groups could meet the same fate, and eventually it would be possible to deplete a major part of the 'protected' union shop force."

It seems to me that the majority have given consideration to an element which is concededly not an issue in the case before us: the good faith of management. There is no charge of dual unionism or unfair labor practice. The Union presumes that the action was based on economic reasons. The District Court's opinion asserts that "no showing has been made that the subcontracting was done * * * to bring pressure on the Union or its members * * *." Had there been evidence to support a reasonable fear of the kind of threat which the majority apparently foresee, their conclusion would merit serious consideration.

The agreement between the Union and management was the result of collective bargaining. A long line of cases provided that management had the right to contract out work unless that right were expressly limited by the terms of the agreement. The majority hold that these cases have not been reversed by the ruling in Warrior. Yet the majority would give the Union the benefit of provisions which it may, or may not, have sought, but which, in any event, it did not secure. Management, on the other hand, reasonably relying on that same long line of cases, has been misled to its damage, through no fault of its own.

I do not subscribe to the erosion of the existing rights held by labor or management through the judicial process. Such changes should come about only through agreement, legislation, or voluntary surrender.

I must respectfully dissent. I would reverse the judgment below in its entirety.