John G. **COULON**, as Chairman of the Grievance Committee of the Brotherhood of Railroad Trainmen—C. W. Jones Lodge 835, an unincorporated association, in its own right and as representative of operating employees of Carey Cadillac Renting Company, Inc., and H. J. Metzner and James Hennessey, as President and Secretary respectively of C. W. Jones Lodge 835 of the Brotherhood of Railroad Trainmen, an unincorporated association, in its own right and as representative of operating employees of Carey Cadillac Renting Company, Inc., Plaintiffs,

v.

CAREY CADILLAC RENTING COMPANY, Inc., Defendant.

United States District Court
S. D. New York.
Aug. 2, 1962.

Zelenko & Elkind, New York City, for plaintiffs, Arnold B. Elkind, Paul H. Kirwin, New York City, of counsel.

Lewis, MacDonald & Varian, New York City, for defendant, Robert D. Witte, Maurice J. Gilchrist, Jr., William J. Condren, New York City, of counsel.

CASHIN, District Judge.

Defendant has moved to dismiss plaintiffs' complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

The present motion for dismissal arises from an action brought by plaintiffs under Section 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C. § 185. Plaintiffs' complaint pursuant to 28 U.S.C. §§ 2201–2202 seeks declaratory relief, alleging a violation of a collective bargaining agreement between an employer engaged in interstate commerce and a labor organization as defined in Section 2(5) of the Labor Management Relations Act.

Plaintiffs (hereinafter referred to as the "Union"), are the Chairman of the Grievance Committee and officials of the Brotherhood of Railroad Trainmen, C. W. Jones Lodge 835, which is suing in its own right and as representative of the operating employees of the defendant Company.

The defendant, Carey Cadillac Renting Company, Inc., is a corporation having its principal office in the Southern District of New York, and is engaged in the business of leasing chauffeur-driven limousines for the transportation of persons in interstate and intrastate commerce.

On December 1, 1960, the Union and the Company entered into a Collective Bargaining Agreement, Article VI, Section 1 of which reads as follows:

"ARTICLE VI

"BROTHERHOOD

"SECTION 1. The Company agrees that during the term of this contract, all operations of any and all vehicles used in the Company's business for the production of revenue shall be under the jurisdiction of the Brotherhood. * * * "

Both parties to the action agree that in effect the labor contract provides for a "union shop". The plaintiff Union has jurisdiction of the operation of any and all vehicles used in the Company's business for the production of revenue. The agreement further provides that after sixty days' service all chauffeurs shall be considered to have qualified and may apply for union membership.

The complaint alleges that on or about and after February 1, 1962, the Company violated and continues to violate the contract in that it has followed a pattern of "farming out" part of its business to competitive enterprises, some of which employ non-union operators. In return, the Company receives revenue in the form of a percentage of the profits collected by those enterprises. As a con-

sequence of this "farming out" procedure, about fifteen members of the Union have been furloughed who would have been able to be employed if this system had not been utilized.

The Union claims that this procedure is an unfair labor practice, and is a violation of the labor agreement. Plaintiffs claim that it is also a scheme to discredit the Union as a collective bargaining agent. The Company has refused to arbitrate on the ground that the question is not an arbitrable issue. The Union's complaint seeks a declaratory judgment that under the contract of December 1, 1960 the defendant Company cannot, without the consent of the plaintiffs, furlough members of the Brotherhood when there are vehicles to operate and passengers to be transported, with the purpose of transferring customers for revenue purposes to competing enterprises. The Union also seeks an order requiring the defendant to cancel existing furloughs, and to pay money damages.

The Company moves to dismiss the complaint, questioning the jurisdiction of the court, and the correctness of the plaintiffs as parties. The Company's objections are without merit.

■ The court has jurisdiction over the present controversy under Section 301 (a) of the Labor Relations Act as amended, 29 U.S.C. § 185. The action is not merely a suit to enforce the alleged claim of an individual member of a labor organization, but obviously concerns the enforcement of the right of a labor union "to maintain the integrity of its contract." Allied Oil Workers Union v. Ethyl Corp., 301 F.2d 104, 105 (5 Cir. 1962). As such, as was similarly indicated by the learned Judge in the Allied Oil Workers case, the present controversy is ruled not by Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955), but falls rather within the doctrine of Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) ; Goodall-Sanford, Inc. v. United Textile Workers of America, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957) ; and General Electric Co. v. Local 205, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957).

■ The crux of the defendant's dismissal motion is that the plaintiffs do not state a claim upon which relief can be granted, in that it is claimed that the interpretation of the collective bargaining contract which the Union seeks is made illegal by operation of the 1959 Landrum-Griffin Act. In pertinent part, 29 U.S.C. § 158(e) states:

"It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void: * * *."

The Company asserts that, in view of this provision, as a matter of law its practice of farming out work to competitors and furloughing its employees cannot constitute a violation of an agreement and any agreement which would make it a violation is void and unenforceable. The defendant's reliance upon Section 158(e) for this proposition is, however, misplaced because the statute was enacted for a different purpose from that claimed by the Company. The legislative history of the act does not indicate that Congress intended that this provision, which was designed to cover secondary boycotts and "hot cargo" agreements, be broadly extended in application to a case such as the one at hand. In this regard, it is interesting to note that in United Steel Workers of America v. Warrior & Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), which was decided

after the effective date of the Landrum-Griffin Act, the United States Supreme Court compelled arbitration on the same issue involved in the instant case, i. e., the employer's practice of contracting out work while laying off employees who could have performed such work. It is dubious that the Court would compel arbitration on a matter which would at that time lead to an illegal result. In like manner, in International Union, United Automobile, Aircraft & Agricultural Implement Workers, Local 391 v. Webster Electric Co., 299 F.2d 195 (7 Cir. 1962), the court enforced the exact relief sought here by the plaintiff Union.

The present action is another example of the collision between management's desire for economical operation, and a union's desire to preserve the job security of its members and its own integrity as a bargaining unit. The Union asserts that when the Company contracted with it as the recognized bargaining unit for its employees, the Company impliedly agreed thereby not to avoid and circumvent its obligations by farming out its business to competing enterprises while laying off Union employees.

This proposition of the Union has support in recent case law. In the Webster Electric case, supra, the Seventh Circuit was confronted with a situation very similar to the one at bar. There the defendant company contracted with an independent contractor for the performance of defendant's office janitorial work which had always theretofore been performed by employees of the company within the union. The defendant thereafter without the consent of the union laid off three employees who had formerly performed the services, all of whom were covered by the union contract. The union sought relief from the court to declare by its judgment that the company did not have the right to sub-contract work customarily performed by its employees. The Seventh Circuit held that the "union shop" provision in the collective bargaining agreement precluded the employer from replacing its employees by "contracting out" the work they were performing. 299 F.2d 195, 197 (1962). The court stated:

"Has the right of defendant to contract out work, concededly recognized * * *, been modified or abrogated by the provisions, express or implicit, of the bargaining agreement?

"Plaintiff and defendant have an agreement which, while it is in effect, fixes the rights of each against the other. Any right not effectually asserted by either in negotiations leading to the execution of the agreement cannot now be insisted upon during the stated life of the agreement if it be inconsistent with the purpose and scope of that document. There is no express prohibition of contracting out to be found in the agreement. But for the agreement, defendant would have that right, as an incident of management. However, there is an agreement providing for a union shop. * * * If this small group can be thus replaced, then other groups could meet the same fate, and eventually it would be possible to deplete a major part of the 'protected' union shop force. We hold it would be inconsistent with the basic purpose of the agreement to approve the contracting out of the janitorial jobs here involved." Ibid.

I agree with the rationale therein expounded and consider it applicable to the present controversy.

There is no need to discuss the alternative matters asserted by the Company, in view of the fact that I am not dismissing the complaint, as they are matters to be taken up at the trial.

The defendant's motion to dismiss the plaintiffs' complaint is denied in all respects.

It is so ordered.