**BINDERY AND SPECIALTY WORK-ERS' UNION, LOCAL NO. 182, etc., et al., Plaintiffs,**

v.

**The HAYNES LITHOGRAPH COM-PANY, Defendant.**

No. 63C210.

United States District Court
N. D. Illinois, E. D.

Oct. 29, 1963.

Lester Asher and Michael C. Greenfield, Asher, Gubbins & Segall, Chicago, Ill., for plaintiff.

J. Norman Goddess, Chicago, Ill., for defendant.

DECKER, District Judge.

This case arises on a motion by the plaintiffs, the Union and several individuals who are members of the Union, for summary judgment against the defendant, who had entered into a collective bargaining agreement with the Union, and who employed the individual plaintiffs.

The jurisdiction of this Court is founded on Section 301 of the Taft-Hartley Act (29 U.S.C. § 185).[1]

▮ The contract in question does not have an arbitration clause for the resolution of disputes or grievances between the Union and the employer, and therefore the Union is suing directly in this Court for redress of its grievances. International Union, United Auto, Aircraft and Agri. Imp. Workers of America, Local 391 v. Webster Elec. Co., 299 F.2d 195 (7 Cir. 1962).

The complaint alleges that on February 6, 1961, the company and the Union entered into a collective bargaining agreement which was to remain in effect retroactively from December 1, 1960 through May 31, 1963. The agreement governs the conditions of employment of all janitors and porters employed by the company. Beginning on September 16, 1962, after about three months of negotiation with the Union on the issue of "contracting-out" janitor work, the company began to "sub-contract" the work formerly done by employees who were janitors and porters to an independent contractor, the Service Master Company. The Union alleges that by this action, the company unilaterally terminated the collective bargaining agreement; that the Union is without an adequate remedy at law; and that the Union has suffered damages because of this subcontracting of the work.

The Union seeks a declaration of its rights under the agreement, an injunction of the defendant from contracting out its janitorial work, an order requiring the defendant specifically to perform the terms of the agreement and a judgment for damages.

The defendant denies that it has breached the contract in any way. The

---

1. Subparagraph (a) of Section 301 is as follows:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

defendant affirmatively states in its answer that it has not employed any persons in the janitorial or porter classifications since December 17, 1962, but that if it ever has occasion to employ persons again in these classifications, it will employ them under the contract in question. The defendant admits that it has contracted out the janitor and maintenance work to the Service Master Company and admits that it is not currently employing the individual employees, who are joined as plaintiffs, as janitors or porters; but it states that it is employing them in its bindery and pressroom departments under another collective bargaining agreement with the same Union which is one of the plaintiffs in this case.

Defendant argues in its briefs that the individual plaintiffs herein have not suffered any damage by reason of its contracting out janitor work they were formerly employed to perform, because all of the individual plaintiffs have been given new work as production employees by Haynes Lithograph at wages at least equal to their former wages as janitors. The defendant denies that by contracting out the janitorial and porter work it has terminated the collective bargaining agreement, which it argues is still in full force and effect.

Further, the defendant states that its decision to contract out the work in question was made after three months of negotiations with the Union and was dictated solely by the economic requirements of its business.

An examination of the collective bargaining agreement shows that few specific restraints are imposed upon the employer. There is no clause recognizing the Union as the exclusive bargaining agent of the employees. Neither is there a "no-strike—no lock-out" clause nor a job security or seniority clause. As has been said above, there is no clause for the arbitration of disputes or grievances; and there is no clause prohibiting the employer from contracting out work. There is, however, a union shop clause under which all employees, as a condition of their employment, must become and remain members in good standing of the Union thirty days after going to work for Haynes Lithograph.

The plaintiffs move for summary judgment on the ground that the sole issue left in the case is whether the company's action constitutes a breach of the collective bargaining agreement, and the plaintiffs argue that this issue is one of law and not of fact. The plaintiffs rely on International Union, United Auto, Aircraft and Agri. Imp. Workers of America, Local 391 v. Webster Elec. Co., supra, for their argument that, notwithstanding the fact that the collective bargaining agreement does not expressly forbid subcontracting, because the collective bargaining agreement provides for a union shop, the defendant employer's right to contract out work has been abrogated by implication from the terms of the agreement.

Haynes Lithograph opposes the motion for summary judgment and argues that the Webster Electric case should be distinguished.

The reliance of the plaintiffs on Webster Electric would appear to be misplaced. There the employer contracted out janitorial work which the Court of Appeals stated "theretofore had always been performed by employees of the defendant within the bargaining unit." (Ibid. 299 F.2d at p. 196.) The contract in that case recognized the union as the sole bargaining agent for all persons employed by the defendant at its Racine, Wisconsin, plants, contained a no-strike—no lock-out clause and contained a seniority clause in addition to the union shop clause.

Unlike the contract in the Webster Electric case, in which the Court of Appeals found an implied restraint on the employer's right to contract out the janitorial work, even though it was not expressly prohibited, the contract in the case at bar contains no recognition clause, no no-strike—no lock-out clause and no seniority clause. In the Webster Electric

case the Court of Appeals found that the collective bargaining agreement in question covered *all* of the employees and contemplated that *all* of its maintenance work would be done by *all* of its employees under the contract.

The doctrine that an employer's right to subcontract may be bargained away by implication has found some expression in recent years. The Supreme Court of the United States has never passed upon the issue, but other courts and arbitrators have divided pro and con. Some have held that even though a collective bargaining agreement does not specifically limit the employer in his right to subcontract work; nevertheless, because the Union agrees not to strike during the term of the agreement, that therefore, by implication, the employer should be considered to have agreed to submit his decision to subcontract his work to an arbitrator. See Gaslight Club, 39 L.A. 14 (the contract contained recognition and union shop clauses); Container Corp., 37 L.A. 252 (the contract contained recognition and job classification clauses); and International Union, United Auto, Aircraft and Agri. Imp. Workers of America, Local 391 v. Webster Elec. Co., supra.

Others have held that whatever management rights have not been specifically bargained away remain the sole prerogative of management and that there is no need to get the approval of an arbitrator before management decides to subcontract work, absent an express prohibition in the contract. See Minneapolis Moline, 33 L.A. 893; American Sugar Refining, 37 L.A. 334, 337–338.

A third course has been adopted by some arbitrators which attempts to reconcile these two competing approaches. Under the so-called "rule of reason", in the absence of an express contractual prohibition of subcontracting, the employer has the right to contract out work, provided his action is not discriminatory against the union, or arbitrary or in bad faith, and does not do irreparable, substantial damage to the bargaining unit. See Reynolds Metal Co., 37 L.A. 599.

Since the contract in the case at bar does not contain clauses such as the no-strike clause from which courts and arbitrators have on occasion implied an obligation on the employer not to contract out work, as a matter of law I do not think that this contract on its face can be read to prohibit the contracting out which Haynes Lithograph did.

Further, Haynes Lithograph in this case has submitted an affidavit which states that prior to entering into the collective bargaining agreement here in question, and at all times during the performance of the agreement until December 17, 1962, it was already subcontracting out part of its work; that the Union knew this, acquiesced in it and therefore does not appear entirely consistent in suddenly objecting to further contracting out of further janitorial work after December 17, 1962.

Prior to December 17, 1962, Haynes Lithograph states that it did the following with the Union's knowledge: (a) employed one outside contractor to maintain office floors; (b) employed another outside contractor to sanitize the restrooms; (c) employed window washers at its factories under another collective bargaining contract; (d) at its VanBuren Street plant had the bindery room and work area floors swept by an employee covered by another collective bargaining agreement; (e) at its Touhy Avenue plant, the janitorial work was divided between an employee working under another collective bargaining agreement and one working under the collective bargaining agreement in question; and (f) Haynes estimates that the balance of its janitorial work was performed by employees covered by the collective bargaining agreement in dispute, which balance Haynes estimates to have been about 90% of its total janitorial work.

Since I have found that the contract on its face does not prohibit contracting out of janitorial work, and since because the agreement lacks an arbitra-

tion clause, this Court must sit as if it were an arbitrator to determine whether the contracting out violated the agreement, it becomes necessary to consider the bargaining history of the employer and the Union relative to this issue.

Only the employer has filed an affidavit in opposition to the plaintiffs' motion for summary judgment, and I find that it is an insufficient factual basis for determining the issues in this case. Before the Court can find that by reason of the bargaining history between the parties an implied obligation arose prohibiting the employer from contracting out janitorial work, the Court ought to know whether the Union knew that 10% of the janitorial work was being done by an outside independent contractor at the time it entered into the collective bargaining agreement and until December 17, 1962. This is an extremely important fact question which is not in any way resolved by the pleadings and briefs before the Court.

The plaintiffs did not file a counter-affidavit, but argued by way of a memorandum that 10% of Haynes Lithograph's janitorial work was not "customarily" done by independent contractors. What was "customarily" done is obviously a fact question. Further, the plaintiffs argue that during the three months prior to December 17, 1962, when negotiations relative to subcontracting were taking place, the employer "sought the Union's consent and approval" for its decision to subcontract, by virtue of which the employer has conceded that the right to subcontract was not a management prerogative. Haynes Lithograph argues that it did not seek the Union's consent or approval, but merely was following the law as it has been determined by the National Labor Relations Board that it had to negotiate with the Union the decision to contract out prior to giving it effect. (See Fibre Board Paper Products, 138 N.L.R.B. # 67.) This question again is one of fact and will require evidence as to what actually took place during the three months of negotiations.

Because of the existence of substantial questions of fact which have not been resolved by way of the pleadings, the affidavit and the memoranda filed, the plaintiffs' motion for summary judgment is denied.