UNION OF TRANSPORTATION EMPLOYEES, Plaintiff-Appellant,

v.

OIL TRANSPORT COMPANY, et al., Defendants-Appellees.

No. 80-2291.

United States Court of Appeals, Fifth Circuit.

Feb. 25, 1982.

Law Offices of Marvin Menaker, Les Weisbrod, Dallas, Tex., for plaintiff-appellant.

Schoolfield, Smith & Weissert, Allen P. Schoolfield, Jr., John M. Weissert, Dallas, Tex., for defendants-appellees.

Before BROWN, COLEMAN and RUBIN, Circuit Judges.

COLEMAN, Circuit Judge.

The difficulty with this case is that the District Court, by summary judgment, declined to order arbitration of a union grievance; instead, it held that the issue sought to be taken to arbitration was barred by orders of the Interstate Commerce Commission and the Texas Railroad Commission. We are of the opinion that arbitration should have been ordered and the issue of relief should have been reserved for determination if and when there was a suit to enforce the decision of the arbitrator.

In January and February of 1978 the Union of Transportation Employees (Union) entered into contracts with Oil Transport Company and Gypsum Transport, containing mechanisms for the computation of drivers' pay, based on a formula tied to freight rates and fuel surcharges.

Until May, 1979, the defendant companies followed the contract language, but then the Railroad Commission issued a relief order authorizing increased revenues in the form of fuel adjustment charges. Two additional orders appeared in June, 1979, along with an Interstate Commerce Commission decision, providing that the person responsible for the payment of fuel charges, by contract or otherwise, is to receive the full increase in revenue derived in surcharges. The defendant companies, relying on these orders, refused to include the fuel surcharges in computing drivers' pay. Although grievances were filed, the defendants refused to proceed to arbitration, which the Union alleges violated contract provisions for binding arbitration of grievances.

The Union filed a complaint to compel arbitration in the District Court, in January, 1980, and then filed a motion for partial summary judgment in August, 1980. Defendant companies filed a cross-motion for summary judgment, which was granted on the ground that the contract provisions were in direct conflict with the orders of the Interstate Commerce Commission and the Texas Railroad Commission.

The Union argues that the District Court considered the merits of the grievance rather than enforcing the agreement to arbitrate. Briefly, the Union maintains that the merits of the dispute should not have been reached, and cites cases holding that the courts have no business interfering with arbitration disputes, especially where no national policy is being frustrated; only if the arbitration award would violate an Interstate Commerce Commission or Railroad Commission order could the defendant companies challenge enforcement.

The Union urges that the contract does not require that surcharges be paid directly to the drivers; that what it does require is that the surcharge revenue shall be included in the mathematical indicator for the computation of drivers' pay. It is insisted that there is no clear and irreconcilable conflict between the contract and the orders, therefore the District Court should have deferred to arbitration.

This is a labor dispute and it is admitted that federal labor policy favors arbitration. *See, e.g., United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

In that case, in a suit brought under the statute invoked here, the Union and the employer had a contract with an arbitration clause. When a dispute arose over employees being laid off who were then hired at lower wages by another company to do work for the original employer the Union sought arbitration and the employer rejected it, claiming that the procedure came within the management exception stipulated in the contract. The District Court agreed with the employer and dismissed the suit, 168 F.Supp. 702. The Fifth Circuit affirmed, 269 F.2d 633. The Supreme

Court reversed, saying, 363 U.S. at 582, 80 S.Ct. at 1353:

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved. in favor of coverage (footnote omitted)."

The Court went on to say that:

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator."

The High Court concluded by saying:

"Whether contracting out in the present case violated the agreement is the question. It is a question for the arbiter, not for the Courts."

To like effect (with emphasis), see *United Steelworkers v. American Manufacturing Company*, 363 U.S. 564,[1] 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

The contract here in issue provided (Article 5:22):

"Effective January 15, 1978, drivers employed by Oil Transport Company will be paid on a percentage of revenue on current freight rates received by the company and increases or decreases thereof" (followed by specifications of the standard).

■ While we intimate no opinion as to the ultimate decision of this controversy, it is at least arguable that the orders or the respective Commissions said nothing about the wages to be paid the drivers or the standards by which the wages were to be computed. The orders said nothing about what is to be paid by the employers from resources independent of those received from the fuel surcharges. In the words of *Warrior* and *Gulf, supra,* we cannot with positive assurance say that the wage agreement is not susceptible to the interpretation claimed by the Union.

It follows, we think, that the meaning of the contract should have been submitted to arbitration. We accordingly reverse the summary judgment of the District Court and remand with directions that arbitration be ordered.

■ In so doing, we expressly disclaim any notion of requiring arbitration on subjects clearly excluded by the terms of labor contracts or which, with equal clarity, would violate the law. What we must require here is that the meaning of the contract *vis a vis* the use of the fuel surcharges as a standard for wage determination be submitted to arbitration. The employers have their well known *post arbitration* rights.

The parties have raised several interesting contentions of an ancillary or subsidiary nature. In view of the foregoing we need not reach or decide them at this point.

REVERSED and REMANDED, with directions.

1. "The courts therefore have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in a written instrument which will support the claim. The agreement is to submit all claims to arbitration, not merely those the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware." *Id.* at 568, 80 S.Ct. at 1346.