**DISTRICT NO. 9, INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 16901.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 27, 1962.

Decided Nov. 15, 1962.

---

Mr. Bernard Dunau, Washington, D. C., with whom Mr. Plato E. Papps, Washington, D. C., was on the brief, for petitioner.

Mr. Melvin J. Welles, Attorney, National Labor Relations Board, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, National Labor Relations Board, were on the brief, for respondent. Mr. Hans J. Lehmann, Attorney, National Labor Relations Board, also entered an appearance for respondent.

Before BAZELON, Chief Judge, and FAHY and BURGER, Circuit Judges.

FAHY, Circuit Judge.

This case falls in the same general category as Los Angeles Mailers Union No. 9 v. N. L. R. B., 114 U.S.App.D.C. ——, 311 F.2d 121, recently decided by this court. The Union, petitioner, seeks to have set aside and the Board to have enforced, a Board order holding that the Union had entered into an agreement with an employer [1] which violated section 8(e) of the National Labor Relations Act.[2] This section makes it an unfair labor practice for a labor organization and an employer, *inter alia*, to enter into a contract whereby the employer agrees to cease doing business with any other person; and it declares that "any

---

1. The Greater St. Louis Automotive Association, Inc., hereinafter referred to as the Car Dealers Association or the Association.

2. 73 Stat. 542 (1959), 29 U.S.C.A. § 158 (Supp.1961).

contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void * * *."

The facts are stipulated. The employer is an association whose members are engaged in selling and servicing automobiles and automotive parts. On or about August 15, 1959, the Union negotiated a contract with the Association. The contract was also signed by various companies which were members of the Association. One of these was the Gene Jantzen Chevrolet Company.

The contract contained as Article XXIX the following provision:

"Whenever the Employer [the Association] finds it feasible to send work out that comes under the jurisdiction of the Union and this contract, preference must be given to such shop or subcontractors approved or having contracts with [the Union]."

On or about October 6, 1960, the Union by its representative requested that the Association mediate, under the terms of the agreement,[3] an alleged violation of Article XXIX by the Gene Jantzen Chevrolet Company. Mediation was accepted and was pursued through a panel composed of three representatives of the Union and three representatives of the Association. At the panel proceedings the Union alleged that the Gene Jantzen Chevrolet Company was violating Article XXIX by failing to give preference to subcontractors having contracts with the Union in subcontracting certain work to members of the Greater St. Louis Automotive Trimmers and Upholsterers Association, Inc. The Union requested the panel to find that in this manner the Company breached Article XXIX. The mediation panel unanimously decided that Article XXIX was binding upon all members of the Association. Thereafter

the Greater St. Louis Automotive Trimmers and Upholsterers Association, Inc., filed the charge which initiated the Board proceedings.

It is the position of the Union that since the agreement containing Article XXIX was "entered into" on August 15, 1959, prior to the coming into effect of section 8(e) of the Act on November 13, 1959,[4] the Article cannot be found to have been entered into in violation of section 8(e). The Board concluded, however, that the mediation by the Union and the Association, after section 8(e) became effective, of the question as to the then binding character of the Article, resulting in a ruling that the Article was binding upon the parties, amounted to their agreeing to the Article at that time, which in turn amounted to entering into it in violation of section 8(e). As the Board stated in its decision "the parties maintained, reaffirmed and gave effect to Article XXIX thereby becoming bound by it."

■■ We do not repeat our discussion of the "enter into" problem contained in our Los Angeles Mailers Union decision, above referred to. As we held there, some reasonable latitude of interpretation of the "enter into" language of the statute is available to the Board in order to make effective the congressional intent. Since agreements condemned by section 8(e) are declared to be "unenforcible and void," to reinstitute an earlier one, as was here done, is in substance to enter into it. Accordingly, we accept the Board's position on this branch of the case.

■ An additional contention of the Union is that in any event Article XXIX does not offend section 8(e). The Board's decision to the contrary is phrased somewhat narrowly. It states that Article XXIX as "written, construed and given effect by the parties" comes

---

3. The original stipulation was amended so as to bring into the record before the Board the provisions to which the parties had agreed with respect to mediation.

4. While this new subsection was enacted on September 14, 1959, its effectiveness

was by terms of the statute postponed for sixty days. See 2 Legislative History of the Labor-Management Reporting Act of 1959 at 1862.

within section 8(e). The Board enlarges upon its position by stating that in this case the parties intended to cause a cessation of business between the Car Dealers Association and its members on the one hand and members of the Trimmers Association on the other, "who were not parties to a contract with" the Union.[5]

The Union argues that even if the literal meaning of the language of the Article brings it within section 8(e), it is not within the intendment of the statute to reach secondary boycotts, the conceded purpose of section 8(e). Petitioner points to the fact that the Board, since its decision in this case, has recognized the validity, notwithstanding section 8(e), of an Agreement which prohibits any contracting out of work, citing Ohio Valley Carpenters District Council, 136 N.L.R.B. No. 89, 49 L.R. R.M. 1908. It is said to follow that a less restrictive and more flexible provision such as Article XXIX must also be recognized as valid. The Union also points to recognition by the Board in its present decision that it is "fairly common" in collective bargaining agreements to have a clause which prohibits, limits or restricts subcontracting of work ordinarily performed by employees in a unit covered by the contract, though the Board in this case reserved its position with respect to such a provision.

The Board distinguished Article XXIX from provisions of the sort relied upon by the Union, saying:

"Article XXIX is more than a restriction on subcontracting for the preservation of jobs and job rights of employees. * * * It limits the persons *with whom* the employer can do business. We see no meaningful distinction between a contract which prohibits an employer from handling products produced by a nonunion firm and a contract which causes an employer to cease subcontracting work to a nonunion firm. Both clearly contravene Section 8(e)."

In so deciding the Board accepts the Union's thesis that literalism is not the touchstone for construction of section 8(e). The question rather is whether a particular agreement is fairly within the intendment of Congress to do away with the secondary boycott. As to this we are unable to accept the relegation by the Union of Article XXIX to the area of a legitimate union claim designed to limit the work to employers maintaining labor standards commensurate with those required by the Union. The bare words of Article XXIX do not lend themselves to such an interpretation. They fairly suggest a concurrence between the union and the Association to boycott another employer for reasons not strictly germane to the economic integrity of the principal work unit. Congress has set its face against such concurrence or agreement.[6] We are not inclined to import another and perhaps lawful meaning or purpose into the agreement in the face of the reasons advanced by the Board for holding that the activity flowing from this agreement is within the reach of the statute.[7] While these reasons may not put the matter beyond doubt, they lead us to defer to the Board's judgment.

In summary the reasons are that the questioned provision is not, as it could have been drafted to be, one which has work preservation as its aim, such as a provision barring all subcontracting; nor is it in terms a provision to make certain that the subcontractee shall main-

5. The Board cited Highway Truck Drivers & Helpers, Local 107, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Independent (E. A. Gallagher & Sons), 131 N.L.R.B. No. 117.

6. See in this connection the Kennedy-Thompson analysis before Congress where it is said:

"The House bill [the version in pertinent part which finally passed both houses] makes it unlawful ever to accede to a union's request that he cease doing business with another employer * * *. If the employer acceded, there would be an implied agreement." 2 Leg.History, supra, at 1708.

7. The Board was divided on the question whether Article XXIX was entered into after section 8(e) became effective, but was apparently unanimous that the Article came within section 8(e).

---

tain labor standards commensurate with those of the neutral employer. It is, rather, a provision to make certain that the primary employer is under contract with the Union or for unspecified reasons is approved by the Union. Thus the secondary employer, the Association, is required not to do business with another, the Gene Jantzen Company in this case, because the Union, on one or the other of the grounds available to it under the agreement, does not approve, or has a dispute with, that Company, not with the Association with which the Union has its agreement. Thus, the neutral employer is not to do business with any other employer which is not acceptable to the Union.

Our judgment is that the order of the Board is enforced.