**TODD SHIPYARDS CORPORATION,**
Plaintiff,

v.

**INDUSTRIAL UNION OF MARINE AND SHIPBUILDING WORKERS OF AMERICA, LOCAL 39, AFL–CIO,** Defendant.

No. 62–C–346.

United States District Court
E. D. New York.
July 16, 1964.

Cullen & Dykman, Brooklyn, N. Y., for plaintiff, Robert B. Lisle, Harry G. Hill, Jr., Brooklyn, N. Y., of counsel.

Gray & Grossman, New York City, for defendant, Herman A. Gray, Harry Merwin, New York City, of counsel.

BARTELS, District Judge.

Defendant-Union filed a grievance pursuant to the terms of its collective bargaining agreement with the plaintiff,

claiming a violation of Article XXVII of said agreement. Thereupon plaintiff instituted this action under Section 301 of the Taft-Hartley Act for a declaratory judgment that said Article XXVII was an illegal clause under Section 8(e) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C.A. § 158(e), and for an order staying all arbitration proceedings to the extent that they present claims under said Article. This provision was first embodied in a collective bargaining agreement between the parties in 1944 and appeared in each subsequent agreement including the last one which was signed in August of 1963, subsequent to the filing of the present action. Both parties move for summary judgment.

Article XXVII reads:

"The Company will not use outside contractors except where its own working force is inadequate in number or skill to perform the work promptly and without delay to other work in the yard."

The pertinent portion of Section 8(e) reads as follows:

"It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void * * *."

Plaintiff's complaint rests upon the proposition that Section 8(e) on its face clearly evinces a legislative intent that the employer be unrestricted in the subcontracting of its work and cites certain legislative history and statements of legislators to sustain its contention. Defendant contends (i) that based upon the historical development of the National Labor Relations Act, the Court lacks jurisdiction to entertain this action, and (ii) that Article XXVII does not come within the ban of Section 8(e) because it seeks to protect the job security of employees and not to circumvent the secondary boycott provisions of the Labor Management Relations Act (LMRA).

I

At the outset it is necessary to resolve the jurisdictional question raised by the defendant. The essence of its argument is based upon the fact that Section 8(e) states that it "shall be an unfair labor practice" to enter into the contractual provisions therein described and that before the contract can be denied enforceability, it must be found to be "an unfair labor practice" within the provisions of the LMRA and that this Court has no jurisdiction to determine whether any act constitutes "an unfair labor practice". The historical development recited by the defendant does not sustain its contention. The fact that the resolution of the issue may also involve the determination of whether an unfair labor practice has been committed, will not deprive the Court of jurisdiction. The Supreme Court rejected this contention in Smith v. Evening News Ass'n, 1962, 371 U.S. 195, at page 197, 83 S.Ct. 267, at page 268, 9 L.Ed.2d 246, stating: "In Lucas Flour as well as in Atkinson the Court expressly refused to apply the pre-emption doctrine of the Garmon case; and we likewise reject that doctrine here where the alleged conduct of the employer, not only arguably, but concededly, is an unfair labor practice within the jurisdiction of the National Labor Relations Board." See Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, at 452, 77 S.Ct. 912, 1 L.Ed.2d 972. Moreover, defendant has misconceived the thrust of the plaintiff's contention. Plaintiff in this action is not charging the defendant with an unfair labor practice but merely seeks a declaration that it has not violated the collective bargaining agreement by failing to arbitrate

certain grievances filed by the defendant. Once the defendant has filed a grievance and the plaintiff alleges compliance with the contract and seeks protection by a declaratory judgment against improper demands for arbitration, the Court acquires jurisdiction under Section 301 of the L.M.R.A. Black-Clawson Co., Inc. v. International Ass'n of Machinists, 2 Cir. 1962, 313 F.2d 179; International Tel. & Tel. Corp. v. Local 400, 3 Cir. 1961, 286 F.2d 329; Application of Contessa Lingerie, Inc., S.D.N.Y.1964, 227 F.Supp. 37.

## II

■■ Turning to the merits, plaintiff relies upon the so-called plain meaning of the words of the section and attempts to support this meaning with legislative history and the so-called evolution of Section 8(e). There can be little doubt that the purpose of the enactment in 1959 of Section 8(e) was designed to close the loopholes in the then existing secondary boycott provisions of Section 8(b) (4) (A), so that not only were union sponsored secondary boycotts prohibited but agreements accomplishing the same purpose were also prohibited. Consequently, "hot cargo" agreements not to handle the products of another employer and agreements to cease doing business with any other person were invalidated. See Local 1976, United Brotherhood of Carpenters and Joiners of America, A.F.L. v. N.L.R.B., 1958, 357 U.S. 93, 78 S.Ct. 1011, 2 L. Ed.2d 1186; Employing Lithographers of Greater Miami, Florida v. N.L.R.B., 5 Cir. 1962, 301 F.2d 20.

United Steelworkers of America v. Warrior and Gulf Navigation Company, 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L. Ed.2d 1409, decided after the effective date of the Landrum-Griffin Act, involved the union's right to insist upon arbitration of the employer's practice of "farming out work" which could be performed by its own employees whom the employer was releasing. It would have been a useless gesture for the Supreme Court to enforce arbitration of that question if such "contracting out" could not thereafter have been legally prohibited. See International Union of Electrical, etc. Workers v. General Electric Co., 2 Cir. 1964, 332 F.2d 485, and International Union, etc. Local 391 v. Webster Electric Company, 7 Cir. 1962, 299 F.2d 195, where in the absence of an arbitration clause the court itself held that subcontracting violated the integrity of the collective bargaining agreement.

■■ If without an express clause in the contract that type of subcontracting by the employer may be a violation of the collective bargaining agreement under the LMRA, it is difficult to comprehend how an express clause to that effect would be proscribed by the same Act. In other words, reliance cannot be placed upon a blanket pronouncement that all subcontracting clauses are illegal. Of course if they are addressed to the labor relations of the subcontractor, they are secondary and proscribed. "But not all subcontracting clauses are so designed. The test as to the 'primary' nature of a subcontractor clause in an agreement with a general contractor has been phrased by scholars as whether it 'will directly benefit employees covered thereby,' and 'seeks to protect the wages and job opportunities of the employees covered by the contract.'" Orange Belt District Council of Painters No. 48, AFL-CIO v. N.L.R.B., D.C.Cir. 1964, 328 F. 2d 534, 538. Such clauses take many forms and where they are directed or designed to protect work for the employees and to maintain the integrity of their contract, it has been held that they fall within the area of legitimate union claims. Retail Clerks Union Local 770, etc. v. N.L.R.B., 1961, 111 U.S.App. D.C. 246, 296 F.2d 368; Ohio Valley Carpenters and Cardinal Industries, 136 N.L. R.B. 977 (1962). In District No. 9, International Ass'n of Machinists, AFL-CIO v. N.L.R.B., 1962, 114 U.S.App. D.C. 287, 315 F.2d 33, the court held that a subcontracting clause in a collective bargaining agreement requiring preference to be given to certain subcontractors approved by the union, vio-

lated Section 8(e), but that the clause could have been otherwise drafted, remarking: "In summary the reasons are that the questioned provision is not, as it could have been drafted to be, one which has work preservation as its aim, such as a provision barring all subcontracting * * *" (p. 36). In short, the test is whether the clause seeks merely to protect the economic integrity of the work unit or to blacklist specified employers in order to involve them in labor disputes not their own.[1]

■■ The thrust of plaintiff's argument is that the literal reading of Section 8(e) on its face clearly invalidates Article XXVII of the collective bargaining agreement. In making this contention plaintiff simply ignores a cardinal principle of statutory construction. The Supreme Court has repeatedly held that a statute must be construed in accordance with the Congressional purpose and intention despite a literal meaning to the contrary. Markham v. Cabell, 1945, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165; United States v. N. E. Rosenblum Truck Lines, 1942, 315 U.S. 50, 55, 62 S.Ct. 445, 86 L.Ed. 671; Elizabeth Arden, Inc. v. Federal Trade Commission, 2 Cir. 1946, 156 F.2d 132, 134. There is no hint in the legislative history cited by plaintiff indicating that Congress intended the statute to have the broad sweep which plaintiff claims. The type of subcontracting here presented was not discussed. Article XXVII of the agreement permits the employer to subcontract after certain conditions precedent have been satisfied. Once those conditions are met, to wit, inadequacy of the employees work unit in number and skill, the employer is free to deal with any subcontractor.[2] Most pertinent is Coulon v. Carey Cadillac Renting Co., S.D.N.Y. 1962, 231 F.Supp. 991, where the employer farmed out part of its business and at the same time furloughed fifteen employees whom it could otherwise have employed. The gravamen of the union's complaint was an alleged violation of the collective bargaining agreement. The employer moved to dismiss on the ground that Section 8(e) made the union's interpretation of the agreement illegal. In rejecting this contention and denying the motion the court held that there was nothing in the legislative history to justify the conclusion that the scope of Section 8(e) could be extended to that type of case. The attempts of the plaintiff to differentiate the foregoing authorities are wholly unrealistic and without substance. See also Cox, The Landrum-Griffin Amendments to the National Labor Relations Act, 44 Minn.L.Rev. 257, 273 (1959).[3]

---

1. See Aaron, The Labor-Management Reporting and Disclosure Act of 1959, 73 Harv.L.Rev. 1086, 1119 (1960): "As long as the union can show that the subcontracting provision will directly benefit employees covered thereby, its other motives, as well as the incidental effects of such an arrangement on outsiders, should not be made the basis for declaring the agreement illegal."

2. In a supplemental affidavit plaintiff asserts that defendant has occasionally inquired as to the character of the subcontractor. If this clause is employed for the purpose of blacklisting, then plaintiff may file an unfair labor practice with the NLRB.

3. Plaintiff relies upon two law review articles which on closer analysis fail to support its position. (1) Fairweather, Implied Restrictions on Work Movements, 38 Notre Dame Law. 518, 554 (1963), where it was concluded that "an agreement between a union and the employer that that employer will not deal with another employer should be considered contrary to Section 8(e) of the National Labor Relations Act whether such restriction has secondary boycott undertones or not, and whether implied or express." It does not condemn the type of subcontracting clause in the instant case. (2) Farmer, The Status and Application of Secondary Boycott and Hot Cargo Provisions, 48 Geo. L.J. 327, 338 (1959), which merely indicates that a literal reading of Section 8(e) might lead one to conclude that it prohibits subcontracting clauses in general but that such a reading is erroneous since the Act was never intended to affect such clauses.

Accordingly, the defendant's motion for summary judgment is granted and plaintiff's motion is denied.

Settle order within five (5) days on two (2) days' notice.