350 F.2d 801
 122 U.S.App.D.C. 18
 Raymond O. LEWIS et al., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
Edward G. FOX, Quinn Morton, III, and Hamilton K. Beebe, as
Agents for the Coal Operators, Signatory to the National
Bituminous Coal Wage Agreement of 1950 and as Members of the
Joint-Industry Contract Committee Established by that
Agreement, Respondents.
 Nos. 18863, 18952.
 United States Court of Appeals District of Columbia Circuit.
 Argued April 28, 1965.
Decided Aug. 4, 1965.
 
 Mr. M. E. Boiarsky, Charleston, W. Va., with whom Messrs. Welly K. Hopkins, Harrison Combs and Willard P. Owens, Washington, D.C., were on the brief, for petitioners in No. 18863.
 Mr. Melvin J. Welles, Atty., N.R.R.B., with whom Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Miss Marion Griffin, Atty., N.L.R.B., were on the brief, for respondent in No. 18863 and petitioner in No. 18952.
 Mr. David D. Johnson, Charleston, W. Va., with whom Mr. Robert G. Kelly, Charleston, W. Va., was on the brief, for respondent Quinn Morton, III in No. 18952.
 Mr. Guy Farmer, Washington, D.C., filed a brief on behalf of Bituminous Coal Operators Ass'n, as amicus curiae.
 Mr. Armistead W. Gilliam, Jr., Washington, D.C., filed a brief on behalf of Dixie Mining Co., as amicus curiae.
 Before BAZELON, Chief Judge, and WASHINGTON and TAMM, Circuit judges.
 BAZELON, Chief Judge:
 
 
 1
 The National Labor Relations Board found on a stipulated record that the Protective Wage Clause of the National Bituminous Coal Wage Agreement of 1958 violates 8(e) of the National Labor Relations Act, 28 U.S.C. 158(e). The Board characterized the clause, the pertinent part of which is set out in the margin,[1] as a 'union standards clause.' In several cases decided after the Board's order here, we held that such a clause would not ordinarily violate 8(e) so long as it was 'germane to the economic integrity of the principal work unit,' or sought 'to protect and preserve the work and standards (the union) has bargained for.' Orange Belt District Council, etc. v. NLRB, 117 U.S.App.D.C. 233, 237-238, 328 F.2d 534, 538-539 (1964); Truck Drivers Union, Local 413, etc. v. NLRB, 118 U.S.App.D.C. 149, 158, 334 F.2d 539, 548 (1964). We think the Board should have an opportunity to reconsider the applicability of 8(e) in light of these recent cases. Accordingly we remand.
 
 
 2
 The Board's counsel assumes that the 'work unit,' which governs the application of 8(e) here, consists of the employees of individual mine operators. But the Board's opinion assumes that the unit is the totality of workers covered by the contract, i.e., workers representing 74 to 79 per cent of national bituminous coal production. Finally, in a subsequent, related proceeding,[2] the Board found that the proper units are the employees of the various multi-employer groups and individual operators with whom the Union contracted.
 
 
 3
 If the employees of each mine operator constitute the work unit, the clause may go beyond preservation of work for the contracting employees, and therefore fall within the ban of 8(e). The employees' primary interest is limited to purchase of coal to substitute for coal they would ordinarily produce. But when an operator's sales contracts include grades, types and qualities of coal he cannot produce in his own mines, he must purchase 'supplemental' coal from other producers. Ordinarily such purchases would not appear to threaten the employees' jobs. Failure of the clause to distinguish substitute coal from supplemental coal may give it wider application than is required for protection of the employees of any one operator.[3]
 
 
 4
 On the other hand, if the work unit includes all employees covered by union contract, these employees would have a primary interest in all coal purchased by any employer covered by the union contract. What one mine operating under the contract cannot produce, another one can. This would not avoid the bar of 8(e), if, for example, the union's dominance of the industry and imposition of a uniform, nationwide agreement (1) foreclose the view that the secondary effect of the clause is only 'incidental,' cf. United Mine Workers v. Pennington, 85 S.Ct. 1585 (June 7, 1965), or (2) require the conclusion that the clause is a 'union signatory clause,' District No. 9, Intern. Ass'n of Machinists v. NLRB, 114 U.S.App.D.C. 287, 315 F.2d 33 (1962). But the Board made no such findings.
 
 
 5
 And lastly if the proper work units are the various multi-employer groups and individual operators with whom the union contracted, the question would arise whether the clause violates 8(e) with respect to signatory groups which had among their members substantially all the coal production required for their members' contracts. As in the case of a nationwide work unit, there might then be no substantial amounts of coal supplemental to the unit, even though a particular operator belonging to the unit might have to make supplemental purchases.
 
 
 6
 Of course, we intimate no opinion concerning the proper work unit in this case. That determination involves questions of fact and policy reserved for the Board. The cause will be remanded to the Board for proceedings in accordance with this opinion.
 
 
 7
 So ordered.
 
 
 
 [1]
 'B. It is recognized that when signatory operators mine, prepare, or procure or acquire under subcontract arrangements, bituminous coal mined under terms and conditions less favorable than those provided for in this contract, they deprive employees of employment opportunities, employment conditions and other benefits which these employees are entitled to have safeguarded, stabilized and protected. Accordingly, the Operators agree that all bituminous coal mined, produced, or prepared by them, or any of them, or procured or acquired by them or any of them under a subcontract arrangement, shall be or shall have been mined or produced under terms and conditions which are as favorable to the employees as those provided for in this Contract
 "Procured or acquired under a subcontract arrangement' means any contract, lease, license, agreement, arrangement or understanding pursuant to which the signatory operator acquires coal, either as principal or agent, directly or indirectly from a producer other than such signatory for delivery to a person other than such signatory.'
 
 
 [2]
 The Board's decree not only required posting of the usual notices and excision of the disputed clause, but forbade the adoption of any other clause in violation of 8(e). The Union subsequently negotiated a contractual clause to substitute for that disputed here, and submitted it to the Board with a request that it be found in compliance. The Board refused to find compliance since it thought the substitute clause also violated 8(e). The Board says this decision is not ripe for review. But we express no opinion on that point, see NLRB v. Kohler Co., 122 U.S.App.C.C. , 351 F.2d 798, decided September 2, 1965 (on petition for adjudication of contempt), since our decision not to enforce the decree moots any compliance question
 
 
 [3]
 Counsel also calls our attention to the clause's application to coal which the signatories merely prepare for nonsignatories, without purchase. The Board, however, has not found that the clause extends to such coal, or that such extension would have a significant bearing on the 8(e) question