390 F.2d 858
 129 U.S.App.D.C. 92
 RETAIL CLERKS INTERNATIONAL ASSOCIATION, LOCAL UNION NO.
1288, AFL-CIO; Retail Clerks International Association,
Local Union No. 839, AFL-CIO; and Retail Clerks
International Association, AFL-CIO, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, James R. and
Roger Mead, Co-Partners, d/b/a Mead's Market, Intervenors.
 No. 21010.
 United States Court of Appeals
District of Columbia Circuit.
 Argued Dec. 15, 1967.
Decided Jan. 18, 1968.
 
 Mr. Robert P. Cowell, San Francisco, Cal., of the bar of the Supreme Court of California, pro hac vice, by special leave of court, with whom Mr. S. G. Lippman, Washington, D.C., was on the brief, for petitioners. Mr. Tim Bornstein, Washington, D.C., also entered an appearance for petitioners.
 Mr. Gary Green, Attorney, National Labor Relations Board, with whom Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, and Marcel Mallet-Prevost, Asst. General Counsel, National Labor Relations Board, were on the brief, for respondent.
 Mr. Ted R. Frame, Coolinga, Cal., was on the brief for intervenors.
 Before WRIGHT, MCGOWAN and ROBINSON, Circuit Judges.
 J. SKELLY WRIGHT, Circuit Judge:
 
 
 1
 The single question presented by this appeal is whether the food demonstrator clause[1] sought by the unions for inclusion in their proposed bargaining agreement with two northern California retail grocers is prohibited by Section 8(e)[2] of the National Labor Relations Act. The Board, reversing its trial examiner, found that it is, and that the unions' striking and picketing of the retailers who refused to accept the clause violated Sections 8(b)(4)(i)(ii)(A)[3] and 8(b)(3)[4] of the Act. The demonstrator clause required that demonstrators, whether employed by the retailer or the supplier, be covered by the terms of the Retail Clerks' contract with the retailers. We agree with the Board.
 
 
 2
 * In the retail food industry demonstrators have long been used to pass out samples of particular products and to say a good word about them to customers. Initially demonstrators were simply clerks in the retail store on the payroll of the retailer. After World War II, although the work of the demonstrator remained essentially the same, the practice arose of having the food suppliers furnish the demonstrators to the retail store for the duration of the demonstration. The retail grocery industry of northern California generally has signed agreements including the demonstrator clause with the International and appropriate affiliated local unions. It was the refusal of the retailers here, Nickel[5] and Mead,[6] to agree to inclusion of the demonstrator clause in contracts covering their employees, followed by the striking and picketing, which brought about the unfair labor practice charges in suit.
 
 
 3
 In determining whether the demonstrator clause here violates Section 8(e), the trial examiner found it unnecessary to decide whether demonstrators are employees of the suppliers or the stores. He found that the work of the demonstrator and the food clerk 'must be regarded as bearing a close functional relationship,' that 'demonstrators' jobs are not only fairly claimable functionally, but historically we find the locals claiming the jobs to be subject to contract standards, and both the suppliers and the store owners acquiescing in the claim to the extent of using the locals as a source of supply and paying demonstrators the contract clerks' scale.' Thus he found that the demonstrator clause was 'primarily designed for the lawful objective of unit preservation,' and concluded that 'the nature of the work, the character of the clauses, and the historical development considered together signify that the demonstrator clauses may properly be regarded as aimed at preserving unit work.' Accordingly, he recommended that the complaint charging the unions with unfair labor practices in striking and picketing Nickel's and Mead's be dismissed.
 
 
 4
 In reversing the trial examiner, the Board found that the question whether the demonstrators are employees of the suppliers or the retail stores 'is the central issue of the case.' It held that 'if the demonstrators are actually employees of the stores and members of the bargaining units represented by (petitioners), the demonstrator clauses would serve the primary function of protecting unit work.' On the other hand, the Board held that if the demonstrators are employees of the suppliers, and outside the units, the demonstrator clauses would be unlawful for they would subject the employees of another employer to the union security provisions of the stores' contracts. Finding the demonstrators to be employees of the suppliers and not the stores, the Board concluded 'that the demonstrator clauses are designed, not to protect or to preserve the jobs and working conditions of employees in the unit, but to control the employment practices of other employers who would do business with the Charging Parties, and to aid union members generally.' Thus the clause would violate Section 8(e). The Board ordered the unions to cease and desist from their unfair labor practices designed to have the clauses included in the bargaining agreements.
 
 II
 
 5
 This case presents again the difficult issue of primary versus secondary activity on the part of unions.[7] It is now clear that, where the jobs concerned are fairly claimable by the bargaining unit, the unions may, without violating either Section 8(e) or Sections 8(b)(4)(i)(ii)(A) and 8(b)(3), strike and picket to obtain no-subcontracting[8] and union standards clauses[9] in bargaining agreements, since such activity to protect fairly claimable jobs is primary under the Act and incidental secondary effects of such activity do not render it illegal.[10] Striking and picketing, however, to obtain union recognition subcontracting clauses in bargaining agreements are illegal, since such clauses concern themselves, not with protecting unit jobs, but with the union affiliation of employees of another employer.[11] 'The touchstone is whether the agreement on its maintenance is addressed to the labor relations of the contracting employer vis-a-vis his own employees.' National Woodwork Manufacturers Ass'n v. N.L.R.B., 386 U.S. 612, 645, 87 S.Ct. 1250, 1268, 18 L.Ed.2d 357 (1967).
 
 III
 
 6
 In this case, as both the trial examiner and the Board found, the demonstrators at Mead's and Nickel's were employees of the suppliers, and the demonstrator clause would permit this relationship to continue. Thus the demonstrator clause, since it would require the demonstrator employees of the suppliers of Mead's and Nickel's to be members of the union, violates Section 8(e) of the Act, and the unions' striking and picketing to obtain the clause constitute unfair labor practices in violation of Sections 8(b)(4)(i)(ii)(A) and 8(b)(3).
 
 
 7
 We do not enforce the Board's order as issued, however, because it sweeps too broadly. In Meat and Highway Drivers, Dockmen, etc. v. N.L.R.B., 118 U.S.App.D.C. 287, 295, 335 F.2d 709, 717 (1964), the Board, while finding objectionable only a portion of a union signatory clause, banned the clause in its entirety. Since the objectionable portion could have been excised from the clause, we held that the Board's ban should have been limited to the objectionable portion only.[12] Here the Board finds objectionable only that part of the clause which would permit employees of licensees to be members of the bargaining unit. The Board's opinion makes clear that 'if the demonstrators are actually employees of the stores and members of the bargaining units represented by (petitioners), the demonstrator clauses would serve the primary function of protecting unit work.' Since the demonstrator jobs are fairly claimable by the bargaining unit, the demonstrators could legally be covered by the bargaining agreement, provided they were employees of the contracting employer.
 
 
 8
 The order as issued by the Board required the unions to notify Nickel's and Mead's that they 'will not insist upon inclusion of the demonstrator clauses in any collective-bargaining agreement.' Since, in the context of this case, the demonstrator clause would be unobjectionable if the language permitting the demonstrators to be on the payroll of another employer is excised, that language should be severed without condemning the entire clause. Consequently, Paragraph A. 2. (a) of the Board's order is amended to read: 'Notify Nickel's that it will not insist upon inclusion of the words 'or a licensee of said employer' in the demonstrator clause of any collective bargaining agreement.' Paragraph B. 2. (a) is similarly amended, substituting 'Mead's' for 'Nickel's.'
 
 
 9
 As amended, the Board's order will be enforced.
 
 
 10
 Enforced as amended.
 
 
 
 [1]
 The demonstrator clause reads:
 'Demonstrators All work connected with or incidental to the demonstration of merchandise offered for sale in the Employer's retail store * * * shall be covered by this Agreement, and all such work shall be performed only by members of the appropriate unit as defined in Section 1(a) hereof. No Demonstrator may perform such work in the Employer's retail store unless said Demonstrator is on the payroll of the Employer, party hereto or a licensee of said Employer, and unless the Employer at all times holds and exercises full control of the terms and conditions of employment of any such Demonstrators while such work is being performed in the Employer's retail store. Demonstrators shall be covered by all the terms of this Agreement. All employees classified as Demonstrators on April 1, 1964, shall be paid on the basis of the Regular Clerk's rate of pay.'
 
 
 [2]
 Section 8(e), 29 U.S.C. 158(e) (1964 ed.), reads in pertinent part:
 'It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void * * *.'
 
 
 [3]
 Section 8(b)(4)(i)(ii)(A), 29 U.S.C. 158(b)(4)(i)(ii)(A) (1964 ed.), reads in pertinent part:
 'It shall be an unfair labor practice for a labor organization or its agents--
 '(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in any industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is--
 '(A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by section (e) * * *.'
 
 
 [4]
 Section 8(b)(3), 29 U.S.C. 158(b)(3) (1964 ed.), in pertinent part reads:
 'It shall be an unfair labor practice for a labor organization or its agents--
 '(3) to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 9(a) * * *.'
 
 
 [5]
 Nickel's Pay-Less Stores
 
 
 [6]
 James R. Mead and Roger Mead, d/b/a Mead's Market
 
 
 [7]
 See Comment, 62 MICH.L.REV. 1176 (1964)
 
 
 [8]
 See, e.g., Meat and Highway Drivers, Dockmen, etc. v. N.L.R.B., 118 U.S.App.D.C. 287, 335 F.2d 709 (1964); Bakery Wagon Drivers & Salesmen, Local U. No. 484 v. N.L.R.B., 116 U.S.App.D.C. 87, 321 F.2d 353 (1963); District No. 9, International Ass'n of Machinists v. N.L.R.B., 114 U.S.App.D.C. 287, 315 F.2d 33 (1962); see also Retail Clerks Union Local 770 etc. v. N.L.R.B., 111 U.S.App.D.C. 246, 296 F.2d 368 (1961)
 
 
 [9]
 Meat and Highway Drivers, supra Note 8; Truck Drivers Union Local No. 413, etc. v. N.L.R.B., 118 U.S.App.D.C. 149, 158, 334 F.2d 539, 548, cert. denied, 379 U.S. 916, 85 S.Ct. 264, 13 L.Ed.2d 186 (1964); Orange Belt District Council of Painters No. 48 v. N.L.R.B., 117 U.S.App.D.C. 233, 328 F.2d 534 (1964), and cases therein cited. See also Cox, The Landrum-Griffin Amendments to the National Labor Relations Act, 44 MINN.L.REV. 257, 273 (1959)
 
 
 [10]
 In Meat and Highway Drivers, supra Note 8, this court wrote:
 'Resolution of the difficult issue of primary versus secondary activity, as it relates to this case, involves consideration of two factors: (1) jobs fairly claimable by the bargaining unit, and (2) preservation of those jobs for the bargaining unit. If the jobs are fairly claimable by the unit, they may, without violating either 8(e) or 8(b)(4)(A) or (B), be protected by provision for, and implementation of, no-subcontracting or union standards clauses in the bargaining agreements. Activity and agreement which directly protect fairly claimable jobs are primary under the Act. Incidental secondary effects of such activity and agreement do not render them illegal. Thus the 'cease doing business' language in 8(e) cannot be read literally because inherent in all subcontracting clauses, even those admittedly primary, is refusal to deal with at least some contractors.' 118 U.S.App.D.C. at 291-292, 335 F.2d at 713-714.
 
 
 [11]
 See A. Duie Pyle, Incorporated v. N.L.R.B., 3 Cir., 383 F.2d 772 (1967); Building and Construction Trades Council, etc. v. N.L.R.B., 117 U.S.App.D.C. 239, 328 F.2d 540 (1964); Bakery Wagon Drivers, supra Note 8
 
 
 [12]
 In N.L.R.B. v. Rockaway News Supply Co., 345 U.S. 71, 79, 73 S.Ct. 519, 524, 97 L.Ed. 832 (1953), the Supreme Court held that the Board should not invalidate more of the contract than is unlawful 'where the excess may be severed and separately condemned as it can here.'