HEAVY CONTRACTORS ASSOCIA-
TION, Inc., Plaintiff,

v.

INTERNATIONAL HOD CARRIERS
CONSTRUCTION AND GENERAL LA-
BORERS' UNION OF AMERICA, LO-
CAL NO. 1140, Defendant.

Civ. 03198.

United States District Court,
D. Nebraska.

June 3, 1969.

Malcolm Young, Omaha, Neb., for plaintiff.

David Weinberg, Omaha, Neb., for defendant.

MEMORANDUM AND ORDER

RICHARD E. ROBINSON, Chief Judge.

This is an action brought under § 301 of the Labor-Management Relations Act [LMRA] 29 U.S.C.A. § 185. Plaintiff seeks to determine, in the form of declaratory relief, the rights and legal relations existing between the parties which arise out of a series of collective bargaining agreements, modifications thereof, negotiations subsequent to a modification on February 22nd, 1968, and the possibility of the parties having agreed to reopen the alleged contract modification agreement of February, 1968, as well as actually agreeing to subsequent modification to the February agreement.

Trial was had to the Court without benefit of jury; evidence was introduced; the case was taken under submission and the Court is now ready to announce its decision.

There are certain preliminary matters which must be disposed of before relating findings of fact and conclusions of law. First, defendant has attacked the jurisdiction of this Court by claiming that it lacks the right to use declaratory judgment procedure when confronted with an action based upon §

301 of the LMRA. In El Paso B. & C. Tr. Cons. v. El Paso Chapter Associated Gen. Contractors, 376 F.2d 797, 800 [1967], the Fifth Circuit Court of Appeals stated that parties to a collective bargaining agreement "will be able to secure under Sec. 301 declarations of their rights under a contract by means of the declaratory judgment procedure." That Court then proceeded to cite Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 1455–1456, 77 S.Ct. 912, 1 L.Ed.2d 972 [1957], which contained language supporting the use of declaratory judgments. See also Black-Clawson Co. etc. v. International Ass'n of Machinists Lodge 355, 313 F.2d 179 [2d Cir. 1962]. Secondly, defendant contends that § 301 actions do not relate to issues of whether or not a contract exists but rather only situations where there has been a violation of the existing contract. Section 301 has generally been read to give it expanded scope. While it has in earlier cases been argued that it only relates to violations for which damages or injunctive relief are proper, the present trend is for declaratory relief usually to determine the rights under a bargaining agreement. It would be an unusually restrictive reading of Section 301 to allow declaratory suits to determine rights under existing contracts but still refuse to hear claims as to whether or not a contract exists. Decision as to the existence of the contract seems a necessary prerequisite to suit for rights under a contract. This is especially true in light of an expanded interpretation of § 301. See Textile Workers Union of America v. Lincoln Mills, supra; Todd Shipyards Corp. v. Industrial Union, etc., Local 39, 344 F.2d 107 [2d Cir. 1965]; New Bedford Defense Products Div., etc. v. Local No. 1113, 160 F.Supp. 103 [D.Mass. 1958]; Weyerhaeuser v. Int'l Bro. of Pulp etc., 190 F.Supp. 196 [D.Me.1960]. Thirdly, defendant contends that declaratory judgment procedure should not be available when similar issues are presently before the National Labor Relations Board for decision. It has been consistently held that the United States Courts are authorized to act even though a remedy before the Board may be available based upon an unfair labor practice charge. See Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L. Ed.2d 246 [1962]. Merely because the relief is in the form of a declaratory judgment the result is not different. Todd Shipyards Corp. v. Industrial Union, etc., Local 39, 232 F.Supp. 589, affirmed, 344 F.2d 107 [2d Cir. 1965].

It is therefore the decision of the Court that jurisdiction under § 301 is proper. Any motions made during the course of the trial relating to dismissal because of improper jurisdiction are hereby overruled.

■ Now proceeding to the issues and evidence presented, this Court views the issues to be as follows: [1] Did the letter of understanding entered into between the plaintiff Association and defendant Union constitute a valid collective bargaining agreement which was intended to govern certain relationships between the parties until January 1st, 1971 without any conditions attached? [2] If there was such a valid and existing collective bargaining agreement did the parties mutually agree to modify that agreement? [3] Once having agreed to modify the existing agreement did the parties then agree upon what modifications there should be? It is the decision of this Court that there was a valid agreement binding the parties on February 22, 1968 without any conditions attached but that since that date there has been no agreement to modify nor any agreement as to what those modifications should be.

The parties admit the jurisdictional prerequisites except as to those questions previously discussed. They admit the existence of the parties as the proper collective bargaining agents authorized to enter into collective bargaining agreements in behalf of their respective organizations and admit their existence in an industry affecting commerce with their principal offices or places of busi-

ness in Omaha, Nebraska. The parties further admit the entry into a valid collective bargaining agreement in March 1965 and an amendment of that agreement in May, 1966. As to the agreement of February 22nd, 1968 defendant also admits to its modification in his answer but during the course of the trial and in its brief after trial apparently contends to the contrary.

The basic argument around which this whole lawsuit evolves is a desire by the Union to receive an additional ten [10] cents per hour during 1969 regardless of whether the work was performed on contracts under construction in 1968 or whether the construction job was "bid" or "let" prior to November 1st, 1968. The Association agreed to the ten [10] cents but only to work "bid" or "let" on or after November 1st, 1968. All communications between the parties relating to this matter occurred after February 22nd, 1968.

Defendant attempts to show that the February 22nd "letter of understanding" was only a temporary or preliminary agreement that would be modified or amended after the plaintiff association had secured agreements from others relating to the wage scale. If the other unions secured a higher wage the defendant would then also receive a raise. While there is some evidence that prior to the "letter of understanding" the parties mentioned the possibility of raises commensurate with those received by the other unions there is no mention of such a condition in the "letter of understanding" in February, 1968. The evidence shows a signing by both parties of an agreement on February 22, 1968 modifying the previous agreement without any mention of any understanding that the agreement is conditioned upon any future event or any agreement that it will be modified upon the happening of a future event. The agreement speaks for itself. Any other decision would be contrary to the parol evidence rule. Clearly, there is no ambiguity in this contract relating to wage matters nor has any been suggested. The state-

ments relating to a future condition would also alter and contradict the terms of the agreement. The contract binds the parties until January, 1971 but yet defendant claims it is temporary or conditional. If the parties desired this to be included they would have done so. It is the type of a clause that would or should have been integrated. It relates to the duration and amount of wages and that is specifically what the contract pertains to.

Once having established the agreement of February 22nd, 1968, as a binding obligation the questions become whether subsequent to that date there was an agreement to modify or an agreement to reopen coupled with a simultaneous subsequent modification. As earlier stated, the answer to both is in the negative.

The evidence relating to this matter indicates that after the February 22nd agreement there was discussion relating to a modification. The parties met monthly for another purpose which related to a health, welfare and pension trust. Frequently after these meetings there was discussion as to when the union was to receive a raise and the parties arrived at some understanding that they would receive a raise but could not agree on the jobs on which the raise would be allowed. As earlier stated, if the job was "bid or let" prior to November 1st, 1968 there would be no raise for work performed or being performed on that job. Mr. Schaefer, the business manager for the union testified that there were contracts passed between the parties but that the clause relating to jobs after November 1st, 1968 would be added by the association and deleted by the union. He further stated that they have not agreed to that clause to this day. Mr. Epstein, a member of the Association's Board of Trustees and Chairman of the Negotiating Committee for the Association, also testified that there were discussions between himself and Mr. Schaefer but that the parties could not agree on any wage increase because of the Association's refusal to grant an

increase in wages for work performed on jobs bid or started before November 1st, 1968.

The evidence is thus clear that, while the parties discussed the possibility of altering the amount of increase agreed upon in February, 1968, they never entered into any binding agreement. Furthermore, there is no evidence presented that would indicate that the parties mutually agreed to reopen for negotiation the February Agreement. Neither party is under a duty to renegotiate that agreement[1] until late in 1970 but that does not mean to say that, by mutual consent, the parties could not agree to reopen negotiations and then bargain for a new rate. But that is not the case here. The parties, while there was some discussion concerning a new wage rate, never mutually agreed to reopen the February agreement and then be bound by subsequent negotiations. The parties are free, if they wish, to discuss wage changes but are not required to do so. Under the National Labor Relations Act there are areas that parties to a collective bargaining agreement are required to bargain upon once the agreement binds them but once wages have been set, and there is no discussion as to contract interpretation, they may only be negotiated upon or modified by mutual agreement until a time agreed to in the contract.

Defendant has contended that a unilateral grant of a ten [10] cent raise, but not for contracts "bid or let" prior to November 1st, 1968, would be a violation of the National Labor Relations Act. The Court merely notes that, while that may be considered in determining whether parties actually entered into an agreement for the pay raise, the determination of whether an unfair labor practice has been committed is not a matter for decision by this Court.

Defendant also raises the issue that for this Court to hold the letter of February 22nd, 1968 to be the final collective bargaining agreement between the parties would be disruptive of the collective bargaining process. Defendant claims that the parties mutually agreed to reopen negotiations. It claims that once agreement to reopen has been reached this Court would be interfering with the bargaining process thereby foreclosing the parties' rights under the National Labor Relations Act to solve their differences by collective bargaining. Defendant bases this contention upon an interpretation of the decision of the Regional Director of the National Labor Relations Board that the parties actually agreed to reopen the agreement of February 22nd, 1968. It is not clear that this was the belief of the Regional Director but in any event is not consistent with the evidence here presented. The evidence is that the parties discussed modification but never agreed to modify or to reopen or to be bound by subsequent negotiations. There is no duty to bargain concerning a change in wage rates at the present time. Were there differences relating to an interpretation of the contract the result would be different. But, where the admitted issue is whether or not there was agreement to modify an existing contract which contained within its terms procedure for modification, then there is no disruption of collective bargaining but rather the settlement of a matter properly within the intent and purpose of § 301.

This Memorandum shall constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure.

It is therefore the judgment of this Court that there was a valid and binding collective bargaining agreement entered

---

1. Section 8 [d] of the National Labor Relations Act states that the parties shall not be required "to discuss or agree to any modification of the terms and conditions contained in a contract for a fixed period." A reading of the modification agreement of February 22nd, 1968 indicates that the matter of wages for the period was specifically agreed upon. See NLRB v. Jacobs Mfg. Co., 196 F.2d 680 [2d Cir. 1952]; Robertshaw Controls Company, etc. v. NLRB, 386 F.2d 377 [4th Cir. 1967].

into on February 22nd, 1968. Any discussions previous to that agreement are merged into that agreement. Any subsequent discussions never resulted in an agreement to reopen the existing agreement or to modify that agreement.