William F. RAE et al.

v.

**UNITED PARCEL SERVICE OF PA. and United Parcel Service, Inc.**

Harry J. CONNOR and James Porter et al.

v.

**UNITED PARCEL SERVICE OF PA.**

Civ. A. Nos. 71–1051, 70–543.

United States District Court, E. D. Pennsylvania.

March 27, 1973.

Joseph E. Gold, Philadelphia, Pa., for plaintiffs.

James J. Leyden, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

These cases come before the court on a motion to dismiss. In each, the question is whether a district court has jurisdiction to hear an action seeking damages for the violation of a collective bargaining agreement which by its terms had expired.

The following facts were developed at a series of hearings.[1] Defendant, United Parcel Service, Inc. (UPS) is a common carrier incorporated in New York and doing business in various states, including Pennsylvania. Defendant, United Parcel Service of Pa., (UPS of Pa.) is a contract carrier which made deliveries for four large department stores in Philadelphia. The plaintiffs were employees of the two defendant corporations and members of either Local 107 (truckdrivers) or Local 169 (warehousemen) of the International Brotherhood of Teamsters.

In the spring of 1967, timely notice was given to terminate collective bargaining agreements then existing between Locals 107 and 169 on the one hand and the defendants on the other.[2] The sequence began with a letter of termination, dated January 11, 1967, from Local 169 to the defendants. Both United Parcel Corporations by telegrams dated January 16, 1967, then informed various unions, including Locals 107 and 169, that they were terminating all existing agreements and withdrawing from the unit which had been handling their collective bargaining. By its terms, both contracts would have been automatically renewed unless these notices were given, but with them, expired March 31, 1967.

The two locals, 107 and 169, entered into direct negotiations for new contracts in February, 1967. At the end of March, there was an extension of the contract, but at the end of the extension, April 7, 1967,[3] Local 169 went on strike against the defendants, followed four weeks later by Local 107. Negotiations continued until July, 1967, when both defendants formally ceased operations in

1. As to the necessity of a record for deciding a motion to dismiss a suit under Section 301 of the Labor-Management Relations Act of 1947, see Local 336, American Federation of Musicians, AFL–CIO, and Diane Martin v. Augustus Bonatz, 475 F.2d 433, (3rd Cir. 1973).

2. These contracts were the Master National Freight Agreement, which covered

the operations of many unions and companies, and a contract with Local 169. The Local 169 contract had been amended in December 1964. As amended, its termination date and procedure were identical to the master agreement.

3. It may have been April 9, 1967. The record is not clear.

Philadelphia. Plaintiffs allege that defendants resumed operations in the summer of 1969, and the evidence indicates that UPS has reinstituted common carrier services in Philadelphia with new employees, members of Teamsters Local 623.

Plaintiffs' basic contention is that the collective bargaining agreements were never really terminated and that the notices were a mere "formality" made necessary so negotiations for new agreements could be initiated. Unfortunately for the plaintiffs, neither law, logic, nor the evidence supports their position. The notice given by Local 169 was quite explicit: "We hereby submit formal termination notice as required of the said existing Agreement." It does not say anything about continuing the contract until a new agreement is reached or that the notice of termination is a mere formality not intended to be legally binding. Equally explicit was the telegram from the defendants: "This telegram is to notify you of our intention to terminate all existing agreements at expiration date . . ." Although members of both unions continued to work for seven additional days, it is not suggested by anyone that their doing so was under the terms of new contracts or that this extension cancelled the termination notices.

■ The unions signified their understanding that the contracts were terminated by going on strike. They could not legally have done so if the collective bargaining agreements had been still in effect because both contained "no strike" clauses. Therefore, even if I concluded that the agreements somehow remained in force after April 7, I would be compelled to find that they were breached by the strikes and, of course, in that event, plaintiffs, who were among the strikers, could not assert the agreements they violated as a basis for damages.

Moreover, it is obvious that both unions considered their collective bargaining agreements with the defendants to have expired. In Motor Transport Labor Relations, Inc. v. Highway Truck Drivers and Helpers, Local No. 107, et al., Court of Common Pleas, Philadelphia, Pennsylvania, No. 4, June Term, 1965, No. 1038, a permanent injunction against picketing had been obtained. On April 4, 1967, Local 107 moved to have the injunction dissolved on the grounds that the collective bargaining agreements under which it was issued had expired. As late as March 30, 1970, counsel for Local 169 wrote to UPS stating that it was the union's position that the company was obligated to reach a collective bargaining contract with Local 169. This letter was not an assertion that there was an agreement in being, but that one should be brought into existence through negotiation.

■ The plaintiffs seemed to make two other arguments to provide the basis for jurisdiction in this case. First, since negotiations for new contracts continued after March 31, 1967, the former collective bargaining agreements could not have been terminated. The mere statement of this proposition is enough to indicate its fallacy.

■ Plaintiffs' other contention is that UPS never really stopped doing business in Philadelphia. They cite instances where UPS postage meters and UPS forms were used by other trucking companies. There were witnesses who testified it was their belief that UPS's business really continued through the sham of having its parcels handled by other trucking concerns. Even if this evidence had been sufficiently persuasive to establish the continuation of the UPS operations, (and it was not), it would not follow that the contract remained in force. At most it would mean there was an obligation to bargain in good faith and a violation of the National Labor Relations Act upon a refusal to do so.

I conclude that the contracts were formally terminated as of April 7, 1967.

Hence, there was no contract in effect at the time that the defendants closed their Philadelphia businesses and none when these businesses were allegedly resumed.[4]

■ The existence of subsisting collective bargaining agreements is essential to the maintenance of these cases.[5] Both the original and amended complaints assert Section 301 of the Labor Management Relations Act (the Taft-Hartley Act), 29 U.S.C. § 185, as the sole basis for jurisdiction.[6] This section provides, "suits for violation of *contracts* between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . ." (emphasis added). In other words, no liability can attach under this section that does not flow from the violation of a binding agreement.[7]

■ The contract requirement is not limited to those arising out of collective bargaining, but refers to "contracts" in the customary sense of the word. Burlesque Artists Association v. American Bureau of Variety Artists, 187 F.Supp. 393 (S.D.N.Y.1958). Conduct may constitute an unfair labor practice but there must be a contract violation for recovery under Section 301 of the Labor Management Relations Act. Schatte v. International Alliance, 84 F. Supp. 669 (S.D.Cal.1949), aff'd 182 F.2d 158 (9th Cir.), cert. denied 340 U.S. 827, 71 S.Ct. 64, 95 L.Ed. 608, rehearing denied 340 U.S. 885, 71 S.Ct. 194, 95 L.Ed. 643 (1950).

■■ It is axiomatic that, to show a contract violation, one must first have a contract or at least an agreement in force. Clearly, an expired contract has as much effect on future events as if it had never existed. Thus, Section 301, 29 U.S.C. § 185, cannot provide jurisdiction for alleged contract violations which took place after the agreements had been terminated. Plaintiffs attempt to avoid this conclusion by arguing that the facts show an unfair labor practice. Without a contract, this court still has no jurisdiction. The proper forum is the NLRB which has already ruled that there was no unfair practice on these facts.[8]

Since these cases must be dismissed for lack of jurisdiction, the dispute over compliance with Local Civil Rule No. 45 concerning class action allegations is not reached.

---

4. There was no evidence that UPS of Pa. ever did resume its operations.

5. The cases were consolidated for all purposes in view of the common interests of the parties, and the common issues of law and fact.

6. The complaints also cite Federal Rule of Civil Procedure No. 23 as a basis for class action jurisdiction. However, this procedural rule has no effect unless the court has subject matter jurisdiction.

7. Genesco, Inc. v. Joint Council 13 United Shoeworkers of America, 230 F.Supp.

923, 928–929 (S.D.N.Y.1964) aff'd 341 F.2d 482 (2d Cir. 1965). See also Alexander v. Pacific Maritime Association, 314 F.2d 690 (9th Cir. 1963), cert. denied 379 U.S. 882, 85 S.Ct. 150, 13 L. Ed.2d 88 (1964), and Smith v. Pittsburgh Gauge and Supply Company, 245 F.Supp. 864 (W.D.Pa.1965), aff'd per curiam 361 F.2d 219 (3rd Cir. 1966).

8. These rulings were made in October, 1970, and docketed as Nos. 4 – CA – 5333 and 4 – CA – 5337.