Gerald **HAYES**

v.

**CONSOLIDATED SERVICES CORPORATION, and Local 254, et al.**

**Civ. A. No. 73–1406–C.**

United States District Court,
D. Massachusetts.

Dec. 10, 1974.

Stephen J. Kehoe, Lynn, Mass., for plaintiff.

Robert F. Muse, Robert J. Glass, Nutter, McClellen & Fish, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

CAFFREY, Chief Judge.

This is a civil action in which jurisdiction of this court is invoked under the provisions of 29 U.S.C.A. § 185 which provides in pertinent part:

"Suits for violation of contracts between an employer and a labor organization representing employees in industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. . . ."

At the opening of the trial, the parties defendant advised the Court that they challenged the existence of federal court jurisdiction on the grounds that at the time the events occurred which gave rise to the instant lawsuit there was in existence no labor agreement or contract between an employer and a labor organization, either an international union or a local union. Counsel were then directed first to submit all evidence bearing on the existence *vel non* of a contract. Counsel were also advised that the Court would determine the existence of jurisdiction at the conclusion of the presentation of this evidence before allowing the jury to hear evidence on the merits of plaintiff's allegedly wrongful discharge by his employer, or evidence of his union's alleged failure to properly represent him in his attempt to be rehired.

This directive to counsel was predicated on the holding in a number of cases to the effect that a plaintiff must show the existence of a contract in order to invoke jurisdiction of a federal district court to hear and determine a case based on the occurrence of an allegedly unfair labor practice. Lear Siegler, Inc. v. International Union, et al., 287 F.Supp. 692 (W.D.Mich.1968); Heavy Contractors Ass'n v. International Hod Carriers Construction and General Laborers Union, Local No. 1140, 312 F.Supp. 1345 (D. Nebr.1969), aff'd. 430 F.2d 1350 (8 Cir. 1970); Rae v. United Parcel Service of Pennsylvania, 356 F.Supp. 465 (E.D.Pa. 1973).

At the trial, as which plaintiff called three witnesses and defendants called one witness, the parties stipulated that two other witnesses would testify substantially along the lines of plaintiff's first two witnesses, and a number of documents were introduced into evidence.

The key document introduced into evidence was a collective bargaining agreement which ran between the unions involved and a management association consisting of a group of employers who employed various building maintenance and service personnel. This contract, by its terms, ran for a period of three years, from November 1, 1969 through October 31, 1972. Local 254 was not a signatory to the contract. It was signed by Local 86 which during the three-year life of the contract was "trusteed" by the international union and merged into Local 254. Local 254 assumed the obligations of Local 86 under the contract. Other exhibits introduced in evidence

established that an exchange of letters between the international vice-president of the union, Mr. McGrath, and the president of the employers associations, extended this contract for a period of thirty days, to November 30, 1972. Still other exhibits establish that a new contract was agreed upon and signed on behalf of the union on March 8, 1973 and on behalf of the management group on March 9 or 10, 1973.

I find that this contract was prepared for routine execution effective November 1, 1972, but that it was not renewed as of that date because of the intervention of several events going to the question which Local would represent window washers. Local 254 had approximately 6000 building service employee members, of whom not more than 200 were window washers. Prior to October 31, 1972, the leadership of Local 254 advised the window washer members that that Local would not represent window washers after the expiration of the contract, and it was indicated to the window washers that they would thereafter be transferred by the international and represented by Local 516, which consisted primarily of security and guard personnel. As a result of this intelligence, representatives of the window washers, including plaintiff, contacted Local 829 of the Teamsters Union as a possible new representative of the window washers who did not wish to be represented by the guards' union. Plaintiff and other window washers distributed signature cards looking toward an NLRB-conducted election to determine which Local would be the bargaining agent for the window washers after October 31, 1972. After the signature cards were filed and a hearing was held, the NLRB scheduled an election for January 24, 1973 to determine whether Local 829 or some other Local would thereafter be the bargaining agent for the window washers. However, on January 22, Local 829 filed a petition to withdraw its application to be bargaining agent for the window washers and this petition was allowed by the NLRB on January 23, 1973.

After the withdrawal of Teamsters Union Local 829, Local 516 was not actively pursued as the representative of the window washers and negotiations, which had been suspended since before October 31, 1972, were resumed between Local 254 and management, and these negotiations eventually culminated in the contract which was executed on March 8, 1973.

On all the evidence adduced it is clear that both the union representatives and management representatives knew and testified that at any time between October 31, 1972 and the signing of the new contract on March 8, 1973, the union was free to strike. In fact, on or about January 29, 1973, Local 254 window washers threatened to strike, as a result of which the negotiations were referred to the Federal Mediation Service which assisted in bringing the parties together under the contract executed on March 8, 1973. No claim was made that a strike threat in January 1973 violated any contract. It is clear, however, that both the old contract which expired October 31, 1972 and the new contract executed March 8, 1973 contained clear and unambiguous no strike-no lockout clauses. I find and rule that the members of Local 254 were free to strike in January of 1973 because there was no contract in existence which prevented them from so doing.

It is also clear from the evidence that the date of November 1, 1972, which appears in the contract which the parties stipulated was not executed until March 8, 1973, was inserted in the contract due to a mistake premised on the fact that that would have been the date absent the long hassle about the possible representation of the window washers by the Teamsters Local.

I find that after the expiration of the contract as extended for thirty days, each party guided its relations with the other along the lines of the expired contract. This I find was done, not because any contract was in force which legally required them to do so, but simply because it made sense from the point of

view of both the union and management to do so.

Because a contested representation matter was being processed before the NLRB at this time, no negotiations could be carried on by management with either Local 254 or Local 829 without management either committing an unfair labor practice by so doing or, at the very least, risking being charged with an unfair labor practice. It was obvious that until the matter of which local would represent the window washers thenceforth was resolved, management would either have to stop its business or would have to continue to use its employees and deal with them on some basis. The expired contract offered a basis with which both parties had been able to live for three years and which I find that, for their own selfish interests, both parties, although not legally bound so to do, elected to follow in the short run until a new contract was negotiated subsequent to the decision of the NLRB.

The NLRB has held that continued adherence to the provisions of an expired contract by the signatories thereto does not automatically extend the contract. The Board observed, Combustion Engineering Co., Inc., 86 NLRB 1264:

> "The record shows that upon the expiration of the above-mentioned A. F. of L. agreement, its substantive provisions, as well as the grievance machinery provided for therein, were tacitly continued in effect pending disposition of the representation proceeding. However, it does not appear that the A. F. of L.'s prior exclusive representation status was thereby preserved or recognized . . ."

It is significant that the first dues checkoff made after the November 30, 1972 expiration of the extension of the old contract was refunded the first week in January 1973. It is also significant that there is an express provision in the contract executed on March 8, 1973 providing for retroactive activity of only a limited portion thereof.

In plaintiff's opening, counsel stated that the nub of his complaint is the fact that he was discharged by his employer, Consolidated Services Corporation, on January 24, 1973, for writing political slogans on the side of a building on which he was working as a window washer. This allegedly improper discharge of plaintiff and the allegedly improper failure of his Local to represent him in a grievance proceeding seeking reinstatement occurred in January and February of 1973, at which time I find and rule there was in existence no valid contract. Consequently, this Court lacks jurisdiction to entertain this case, and it is

ORDERED: The action is dismissed, without prejudice to any rights plaintiff may have to bring suit in the courts of the Commonwealth of Massachusetts.